MANION, Circuit Judge.
 

 The State of Indiana, one of debtor Kenneth Smith’s unsecured judgment creditors, appealed the bankruptcy court’s confirmation of Smith’s Chapter 13 plan. The district court affirmed, and the State again appeals. Because the bankruptcy court did not consider Smith’s pre-filing conduct in determining whether he proposed his plan in good faith, we reverse and remand.
 

 I. NATURE OF THE CASE
 

 Smith owned and operated a home repair business in Indiana which fleeced senior citizens by making repairs which Smith knew were not necessary. On August 29, 1984, the State obtained a judgment against him in state court based upon his numerous violations of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1,
 
 et seq.
 
 (1982),
 
 State v. All City, Inc.,
 
 slip op. No. 35,009 (Johnson Cir.Ct. Aug. 29, 1984). The judgment, for which Smith is personally liable, included $11,000 in civil penalties to be paid into the State’s treasury and $37,748 unlawfully received from aggrieved consumers to be paid to the State on the consumers’ behalf and to be held in escrow for distribution to those consumers when paid by Smith. Smith did not appeal that judgment. The State did not charge Smith under its criminal laws and the judgment amount is not restitution to crime victims.
 

 Three months later, on November 30, 1984, Smith, as a voluntary debtor, filed a Chapter 13 bankruptcy petition. Chapter 13 adjusts debts of “an individual with regular income.” 11 U.S.C. § 109(e). It allows a debtor to keep his assets, but he must use his future income to pay his creditors. Chapter 7, in contrast, liquidates the debtor’s assets (with certain exemptions) and distributes the proceeds among his creditors. The debtor, however, keeps his future income, which means that his future earnings are excluded from the assets which may be distributed. 11 U.S.C. § 541(a)(6). After that distribution occurs, the debtor’s debts are discharged. Certain debts, however, are not dischargeable under Chapter 7. See 11 U.S.C. § 523. Among the exceptions to discharge in Chapter 7 are a debt for money obtained by false pretenses or actual fraud, 11 U.S.C. § 523(a)(2)(A), and a debt for a penalty payable to a governmental unit, 11 U.S.C. § 523(a)(7). Smith concedes that both parts of the judgment he owes to the State are nondischargeable under Chapter 7. A discharge under Chapter 13, in contrast, could discharge Smith from those debts. See
 
 In re Rimgale,
 
 669 F.2d 426, 428 (7th Cir.1982). Whether Smith was eligible to invoke Chapter 13 is the question here.
 

 A debtor begins a Chapter 13 case by filing a petition with the clerk of the bankruptcy court. 11 U.S.C. § 301. In his petition, Smith estimated his future monthly take-home pay to be $1,040, with monthly expenses (not including debts to be paid) of $921.83. In addition to the $48,748 judgment owed to the State, he listed five other judgments among his unsecured debts. The State’s judgment equaled 50.4 percent of Smith’s total unsecured debt of almost $97,000. The other unsecured debt primarily arose from Smith’s repair business. Only 6.9 percent of the unsecured debt consisted of consumer debt.
 

 Under Bankruptcy Rule 3015, the debtor must file a plan within 15 days after filing the Chapter 13 petition. Smith timely presented his Chapter 13 plan and submitted a modified plan for reasons unrelated to this appeal on March 4, 1985. Smith’s plan ultimately divided the creditors into four classes: Class 1, an unidentifiable unsecured creditor entitled to priority under 11 U.S.C. § 507 (wages owed to employees, or taxes); Class 2, mortgagees on his real property; Class 3, a lienor on his car; and Class 4, the unsecured creditors, including the State. The plan provid
 
 *815
 
 ed for $115.41 per month to be paid for five years as follows:
 

 $31.79 to the Class 1 creditor;
 

 $73.17 to the Class 2 creditors;
 

 the Class 3 creditor received the deed to the car;
 

 the remaining amount, $10.45 per month, to the Class 4 creditors.
 

 Section 1328 provides, with certain exceptions, that a debtor’s remaining debts are discharged after he completes all payments under the plan. The parties agree that if the plan is confirmed, the debt Smith owes to the State would be discharged when he completes payments under his Chapter 13 plan. 11 U.S.C. § 1328(a). While the plan applies all of Smith’s projected disposable income to make payments, the State will have received less than 2 percent of its claim when Smith completes his plan.
 

 Section 1325 provides that “the court shall confirm a plan if” the plan satisfies certain criteria.
 
 [1]
 
 At issue in this case is § 1325(a)(3), which provides in pertinent part that “the plan has been proposed in good faith and not by any means forbidden by law.”
 

 II. NATURE OF THE PROCEEDINGS
 

 Section 1324 requires the bankruptcy court to hold a hearing before confirming a Chapter 13 plan. Any party in interest may object to confirming the plan. § 1324. The State did, filing an objection to confirmation and a motion to dismiss the petition or to convert the action to one under Chapter 7. No other creditor objected.
 

 The State’s objection to the confirmation and its motion were both based upon Smith’s lack of good faith in filing the petition. The State claimed that Smith filed his petition solely to avoid paying the state court judgment. The State pointed to the short time — less than 100 days — between the entry of judgment and Smith’s filing bankruptcy, the fact that the State is the largest unsecured creditor, and the fact that the State will receive less than 2 percent of its claim.
 

 In a written opinion entered on October 23, 1985, the bankruptcy court confirmed Smith’s Chapter 13 plan.
 
 In re Smith,
 
 No. IP 84-4584-WP-B (Bankr.S.D.Ind. Oct. 23, 1985). The bankruptcy court found that the
 
 plan
 
 was proposed in good faith, but expressly excluded evidence regarding how the debts arose: “The State’s attempt to persuade the Court to consider pre-petition activities is improper.... [T]he important point of inquiry upon confirmation of a Plan is the Plan itself. A debtor’s prepetition activities do not enter into the Court’s
 
 *816
 
 evaluation.” The bankruptcy court did not discuss whether the
 
 petition
 
 was filed in good faith.
 

 The State appealed the bankruptcy court’s confirmation to the district court. The district court affirmed.
 
 In re Smith,
 
 No. IP 85-1700-C (S.D.Ind. Sept. 26, 1986). The district court did briefly discuss whether Smith filed his
 
 petition
 
 in bad faith and held that as a matter of law the fact that a debtor proposes to discharge a debt that would be nondischargeable under Chapter 7 is not by itself sufficient for finding that the petition was filed in bad faith. In addition, Smith did not dispute the amount or validity of the debt he owed to the State, and did not file the petition to stall pending litigation. Therefore, the district court reasoned, “the Bankruptcy Court’s failure to find that the Chapter 13 petition was filed in bad faith was not an abuse of discretion.”
 
 [2]
 
 The court went on to hold that the bankruptcy court correctly did not consider Smith’s pre-petition conduct in determining whether the
 
 plan
 
 was proposed in good faith, and that the bankruptcy court did not abuse its discretion in finding that Smith’s plan was proposed in good faith.
 
 [3]
 

 III. JURISDICTION
 

 Jurisdiction in the bankruptcy court was proper pursuant to 28 U.S.C. § 157 and 28 U.S.C. §
 
 1334.
 
 § 157(b)(2)(L) provides that confirmation of a plan is a “core proceeding.” Under § 157(b)(1) bankruptcy judges may hear and determine all core proceedings and may enter final judgments in those proceedings. Jurisdiction in the district court was proper pursuant to 28 U.S. C. § 158(a) and is proper in this court pursuant to 28 U.S.C. § 158(d). See 5 King,
 
 Collier on Bankruptcy
 
 ¶¶ 1300.20 to 1300.-21 (15th ed. 1988).
 

 IY. ANALYSIS
 

 A.
 

 “The purpose of chapter 13 is to enable an individual, under court supervision and
 
 *817
 
 protection, to develop and perform under a plan for the repayment of his debts over an extended period.” H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 118 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5968, 6079. “The premises of the bill ... are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13, ... and finally, whether the debtor uses chapter 7 ... or chapter 13, ... bankruptcy relief should be effective, and should provide the debtor with a fresh start.” H.R. Rep. No. 95-595,
 
 supra,
 
 at 118,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News at 6078-79.
 
 See
 
 5
 
 Collier on Bankruptcy, supra,
 
 till 1300.01 to 1300.02;
 
 In re Rimgale,
 
 669 F.2d 426, 427 (7th Cir.1982).
 

 “ ‘The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case.’ ”
 
 Rimgale, supra,
 
 669 F.2d at 431 n. 14 (quoting
 
 In re Kull,
 
 12 B.R. 654, 658 (S.D.Ga.1981),
 
 aff'd sub nom. In re Kitchens,
 
 702 F.2d 885 (11th Cir.1983)). Yet “[t]he term, ‘good faith,’ is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible.”
 
 In re Hawes,
 
 73 B.R. 584, 587 (Bankr.E.D.Wis.1987).
 
 See In re Chaffin,
 
 816 F.2d 1070, 1073 (5th Cir.1987),
 
 modified on reconsideration on other grounds,
 
 836 F.2d 215 (5th Cir.1988). As accurately summarized by one recent case:
 

 The Bankruptcy Code does not define “good faith.” There is no illuminating legislative history. More than 300 reported “good faith” decisions form a maze of rules and exceptions swallowing rules. Nearly identical fact patterns have produced inconsistent results within judicial districts and across the circuits. The reported decisions demonstrate that “good faith” is an illusive statutory description of the limits of Chapter 13 relief.
 

 In re Easley,
 
 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987) (collecting cases).
 

 In
 
 In re Rimgale, supra,
 
 669 F.2d 426 (7th Cir.1982), this court joined the majority of circuits in holding that good faith must be defined on a case-by-case basis because “[a] comprehensive definition of good faith is not practical.” 669 F.2d at 431 (quoting
 
 In re Terry,
 
 630 F.2d 634, 635 (8th Cir.1980) (quoting 9
 
 Collier on Bankruptcy,
 
 119.20 at 319 (14th ed. 1978))). Instead,
 
 Rimgale
 
 set forth a nonexhaustive list of relevant factors as follows:
 

 (1) Does the proposed plan state [debt- or’s] secured and unsecured debts accurately?
 

 (2) Does it state [debtor’s] expenses accurately?
 

 (3) Is the percentage of repayment of unsecured claims correct?
 

 (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
 

 (5) Do the proposed payments indicate “a fundamental fairness in dealing with one’s creditors,”
 
 In re Beaver,
 
 2 B.R. 337, 340 (Bkrtcy.S.D.Cal.1980)?
 

 669 F.2d at 432-33 (footnotes omitted).
 

 The bankruptcy court properly considered the fifth
 
 Rimgale
 
 factor, whether Smith’s plan evinced “a fundamental fairness,” but without explanation failed to adhere to footnote 22 to the
 
 Rimgale
 
 opinion, which elaborated upon what “fundamental fairness” means. Footnote 22 provided as follows:
 

 22. In this connection, the bankruptcy court may wish to examine the timing of the bankruptcy filings, the proportion of the total unsecured debt that is represented by the [state tort] judgment, and the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious conduct. See
 
 In re Sanders,
 
 13 B.R. 320, 322-323 (Bkrtcy.D.Kans.1981) (classification of claims governed by Section 1122, which provides that “a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class”; claims subject to discharge only under Chapter 13 are not “substantially similar” to fully dis-chargeable claims).
 

 
 *818
 
 669 F.2d at 433 n. 22. We subsequently emphasized this footnote in
 
 In re Bassak,
 
 705 F.2d 234, 237 (7th Cir.1983). In addition, in footnote 14 to
 
 Rimgale,
 
 this court cited favorably
 
 Kull, supra,
 
 for the proposition that the “debtor’s motive in seeking Chapter 13 relief” and the “circumstances under which debts were incurred” are also relevant factors. 669 F.2d at 431 n. 14.
 

 Most circuits rely upon lists of factors similar to those set forth in
 
 Rimgale.
 
 Among these factors are why the debtor filed under Chapter 13, how the debts arose, and whether those debts would be nondischargeable in Chapter 7. See
 
 Easley, supra,
 
 72 B.R. at 950-55 (Bankr.M.D.Tenn.1987) (collecting cases);
 
 In re Sutliff,
 
 79 B.R. 151, 154 (Bankr.N.D.N.Y.1987). These broad sets of factors ultimately merge into a generic “totality of the circumstances” test.
 
 See Sutliff, supra,
 
 79 B.R. at 154;
 
 Easley, supra,
 
 72 B.R. at 950. This “totality of the circumstances” test forces the bankruptcy court to examine “ ‘whether or not under the circumstances of the case there has been abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal.’ ”
 
 Rimgale,
 
 669 F.2d at 431 (quoting
 
 In re Terry, supra,
 
 630 F.2d at 635 (quoting 9
 
 Collier on Bankruptcy,
 
 119.20 at 319 (14th ed. 1978))).
 
 [4]
 

 B.
 

 Under a “totality of the circumstances” test, a debt’s nondischargeability under Chapter 7 arising from a debtor’s pre-filing conduct is relevant to the debt- or’s good faith. See
 
 Neufeld v. Freeman,
 
 794 F.2d 149, 152-53 (4th Cir.1986);
 
 Estus, supra,
 
 695 F.2d at 317;
 
 In re Todd,
 
 65 B.R. 249, 253-55 (Bankr.N.D.Ill.1986). Where, for example, “the underlying fraud and a bankruptcy filing are all part of one scheme, or the debtor never intended to repay the debt, the courts have uniformly denied confirmation.”
 
 Chaffin, supra,
 
 836 F.2d at 216 (footnote collecting cases omitted).
 

 That a debt would be nondischargeable under Chapter 7, however, is not alone sufficient as a matter of law to constitute bad faith.
 
 Chaffin, supra,
 
 816 F.2d at 1074 and 836 F.2d at 216;
 
 Neufeld, supra,
 
 794 F.2d at 152;
 
 Sutliff, supra,
 
 79 B.R. at 155.
 
 See
 
 H.R.Rep. No. 95-595,
 
 supra,
 
 at 129 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News at 6090 (“[t]he fact that a discharge would not be available in a liquidation case should furnish a greater incentive for the debtor to perform under the plan.”). “Although the debtor’s motive in invoking Chapter 13 solely to obtain discharge of a ... non-dischargeable debt, as well as the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith.”
 
 Chaffin,
 
 816 F.2d at 1074.
 

 At the time this court decided
 
 Rimgale,
 
 Congress had already legislated specifically that certain debts are nondischargeable in Chapter 13. See 11 U.S.C. § 1328(a)(1), (2) (alimony and child support) and 42 U.S.C. § 294f(g) (Health Education Assistance Loan Program Act loans).
 
 [5]
 
 “Congress
 
 *819
 
 could have easily added more exceptions to the list in § 1328(a) had it so intended. Absent some other evidence of lack of good faith, therefore, merely seeking the benefit of § 1328(a) does not stamp the debtor’s application with bad faith.”
 
 Chaffin, supra,
 
 816 F.2d at 1074. Good faith cannot be “the absence of any conduct that would traditionally have barred discharge, without rendering Chapter 13’s discharge provisions nugatory.”
 
 Rimgale,
 
 669 F.2d at 431-32.
 

 Section 1325(a)(3) provides that the plan must be
 
 “proposed
 
 in good faith” (emphasis added), not that the debt was incurred in good faith.
 
 [6]
 
 “Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor’s claims.”
 
 Neufeld, supra,
 
 794 F.2d at 153.
 

 C.
 

 This court decided
 
 Rimgale
 
 in 1982. Before holding that
 
 Rimgale
 
 controls this matter, and in particular that Smith’s pre-filing conduct is relevant, we must confirm that the “totality of the circumstances” test continues to be valid now that Congress has enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984) (“BAFJA”). In
 
 In re Gathright,
 
 67 B.R. 384 (Bankr.E.D.Pa.1986),
 
 leave to appeal denied,
 
 71 B.R. 343 (E.D.Pa.1987), the court read BAFJA as replacing the “totality of the circumstances” test: “Even more unfortunate is the tendency of some courts to carry along the excess baggage of such ‘good faith factors’ in the consideration process even after BAFJA has specifically provided that the courts should look elsewhere in the Code to evaluate most of these factors.” 67 B.R. at 388-89. According to
 
 Gathright,
 
 considering the circumstances under which a debt arose is irrelevant “moralizing” by courts “unwilling to grasp the element of the complete nature of the Chapter 13 ‘fresh start.’ ” 67 B.R. at 387. Good faith only means full disclosure and an intent to make the proposed plan payments. 67 B.R. at 388.
 

 We disagree with Gathright’s reading of BAFJA. In enacting BAFJA, Congress demonstrated no specific intent to change the prevailing “totality of the circumstances” test. “The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially-created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.”
 
 Kelly v. Robinson, supra
 
 n. 5, 107 S.Ct. at 359 (quoting
 
 Midlantic Nat’l Bank v. New Jersey Dep’t. of Envtl. Protection,
 
 474 U.S.
 
 *820
 
 494, 106 S.Ct. 755, 759-60, 88 L.Ed.2d 859 (1986) (citation omitted)).
 

 The focus of Rimgale’s test has been narrowed only by the few specific provisions of BAFJA which now cover situations which fell within Rimgale’s analysis. For example, 11 U.S.C. § 109(g)(2) now specifically forbids a debtor in certain circumstances from refiling for bankruptcy within 180 days of a voluntary dismissal of a previous bankruptcy case. § 109 thus reduces in importance the need to evaluate repetitive filings as indicative of a lack of good faith,
 
 Easley, supra,
 
 72 B.R. at 950;
 
 In Re March, supra
 
 n. 3, 83 B.R. 270, 274 (Bankr.E.D.Pa.1988).
 
 Cf. Metz,
 
 820 F.2d at 1497 (while successive filings are not necessarily in bad faith, “successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements.”).
 

 Another new section, § 1325(b), set forth in footnote 1
 
 supra,
 
 shows that a plan proposed in good faith does not require any specific amount or percentage of payments to unsecured creditors.
 
 [7]
 
 Before, bankruptcy courts, in determining “good faith,” looked at whether the plan proposed substantial or meaningful repayment to unsecured creditors. BAFJA changes that.
 
 See Sutliff, supra,
 
 79 B.R. at 154;
 
 Easley, supra,
 
 72 B.R. at 954-55. Now, § 1325(b) states that if an unsecured creditor objects to confirmation, the bankruptcy court may not approve the plan unless that creditor is to receive full payment, § 1325(b)(1)(A), or alternatively, the debtor meets the “ability to pay” test, that is, he commits all of his projected disposable income to the plan for three years, § 1325(b)(1)(B). A plan otherwise confirmable will be confirmed even if it provides for minimal (or no) payments if those payments meet the “ability to pay” test. See 5
 
 Collier on Bankruptcy, supra,
 
 111325.04[2] at 1325-15.
 

 The Eighth Circuit in
 
 Education Assistance Corp. v. Zellner,
 
 827 F.2d 1222, 1224, 1227 (8th Cir.1987), properly focused on this new “ability to pay” test as eliminating some of the old factors related to minimal payments. But
 
 Zellner
 
 preserves the traditional “totality of the circumstances” test.
 
 [8]
 
 Similarly,
 
 Collier on Bankruptcy
 
 highlights the places where Congress has made specific revisions relevant to good faith, such as the new “ability-to-pay” and “repetitive filing” provisions. That treatise supports the view that where Congress has not specifically spoken, the traditional tests for “good faith” remain:
 

 Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor’s payments to be considered as even a part of the good faith standard. Moreover, by dealing specifically in other provisions with the new problems which were perceived to require a redefinition of good faith under the Code, including not only the amount of chapter 13 payments to unsecured creditors but also the issue of repetitive bankruptcies, Congress has made clear its intention that the term good faith should not be expanded be
 
 *821
 
 yond the meaning it traditionally has had. Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith.
 

 5
 
 Collier on Bankruptcy,
 
 II 1325.04[3] at 1325-17 (footnotes omitted). See
 
 Sutliff, supra,
 
 79 B.R. at 153 (“The Code does not define good faith but legislative history does not reveal any Congressional intent to give it a different meaning than it had historically.”).
 

 “The good faith requirement ‘has long been the policing mechanism of bankruptcy courts_’ ”
 
 Todd, supra,
 
 65 B.R. at 250-51 (quoting
 
 In re Chase,
 
 43 B.R. 739, 745 (D.Md.1984)). The definition of good faith has historically not been limited to the debtor’s accurately disclosing all material information on his plan and intending to fulfill it, but also to the factors
 
 Rimgale
 
 sets out, including the “debtor’s motive in seeking Chapter 13 relief” and “circumstances under which debts were incurred.” Thus, after BAFJA courts do and should continue to look at the circumstances under which a debt was incurred and whether that debt would be dischargeable in Chapter 7. See, e.g.,
 
 Chaffin, supra,
 
 816 F.2d at 1073-74 and 836 F.2d at 216;
 
 Sutliff, supra,
 
 79 B.R. at 154-55;
 
 Easley,
 
 72 B.R. at 951-54;
 
 Todd, supra,
 
 65 B.R. at 255-56.
 

 D.
 

 Under the “totality of the circum-tances” test, as read in light of BAFJA, the bankruptcy court erred in failing to consider the circumstances in which Smith’s debts arose and the fact that they are otherwise nondischargeable. In addition, the bankruptcy court erred in not considering the timing of Smith’s bankruptcy filing, which occurred three months after he was found liable for fraud. The court should explore if and when Smith, when assessing his scheme’s downside, relied upon the favorable prospect of using bankruptcy law to avoid repaying his fraudulently won gains.
 
 See Chaffin, supra,
 
 836 F.2d at 216;
 
 see also Okoreeh-Baah, supra,
 
 836 F.2d at 1033.
 

 We do not suggest that filing without delay by itself constitutes bad faith. While the short time period between the entry of judgment and the filing of bankruptcy may be relevant,
 
 Rimgale,
 
 669 F.2d at 433 n. 22;
 
 contra March, supra,
 
 83 B.R. at 276, the Code does not require a debtor to wait a certain period of time after a judgment is entered prior to filing bankruptcy.
 
 March, supra,
 
 83 B.R. at 276. Usually, the opposite phenomenon arises: a debtor waits until execution’s brink before seeking bankruptcy relief. “In fact, early filing may save the creditors some costs associated with execution.”
 
 Id.
 
 at 276 n. 14. But “[wjhere debtors have filed for bankruptcy soon after the entry of a judgment ..., courts have found that such filing indicates debtor’s desire to use bankruptcy procedures to avoid paying a debt rather than for rehabilitation.”
 
 Todd, supra,
 
 65 B.R. at 255 (collecting cases). In this regard, the bankruptcy court should also consider the proportion of the debt owed to the State to the total debt and to the total unsecured debt. Smith proposed in his Chapter 13 plan to include in Class 4, the general unsecured debt class, a substantial debt owed to the State incurred shortly before filing his petition.
 

 As directed by
 
 Rimgale,
 
 a bankruptcy court should also consider when determining good faith “the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious conduct.” 669 F.2d at 433 n. 22. Footnote 22 to
 
 Rimgale
 
 cited to 11 U.S.C. § 1122, which provides that “a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class.” Sections 1322(a)(3) and 1322(b)(1) further specify this directive: § 1322(a)(3) requires that a plan shall “provide the same treatment for each claim within a particular class,” and § 1322(b)(1) incorporates § 1122 and states that a plan may “designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated.”
 

 
 *822
 
 The appropriate solution may be to make the State into a separate class and to allow it a higher recovery, as opposed to disallowing the plan. See generally 5
 
 Collier on Bankruptcy,
 
 111122.04. It is reasonable to view a debt incurred as a result of illegal activities as different from a private debt between two persons. See
 
 In re Jones,
 
 slip op. No. 83 C 6338 (N.D.Ill. Oct. 1,1983).
 
 [9]
 
 The nature of the judgment does not require, but could support, reclassifying the debt owed to the State separate from Smith’s other unsecured debt, along with higher payment of the debt owed to the State.
 
 Id.
 

 V. CONCLUSION
 

 We do not express an opinion on whether Smith’s plan should be confirmed. We leave that decision to the bankruptcy court’s common sense and judgment.
 
 See Okoreeh-Baah,
 
 836 F.2d at 1033. The State admitted at oral argument that even if it never collects, it wants its debt hanging over Smith as a “little cloud” to punish him. But “ ‘nondischargeable’ does not equate with ‘collectible’ and ... often the creditor is practically better off with a partial payment under a Chapter 13 plan than he would be if the Chapter 13 case had not been filed.”
 
 Gathright, supra,
 
 67 B.R. at 387.
 

 Pursuant to 28 U.S.C. § 158, we reverse the judgment below and remand this matter to the district court with directions to remand this matter to the bankruptcy court for reconsideration in line with this opinion and this court’s opinion in
 
 Rimgale.
 

 Each party shall bear its own costs.
 

 Reversed and Remanded with Instructions.
 

 [1]
 

 . Section 1325 provides in relevant part as follows:
 

 § 1325. Confirmation of plan
 

 (a) Except as provided in subsection (b), the court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C)the debtor surrenders the property securing such claim to such holder; and
 

 (6)the debtor will be able to make all payments under the plan and to comply with the plan.
 

 (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
 

 (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
 

 (B) the plan provides that all of the debtor’s projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
 

 [2]
 

 . We assume that when the district court referred to "abuse of discretion,” it was reviewing the bankruptcy court’s findings under a "clearly erroneous” standard. “A bankruptcy judge's finding that a debtor’s plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard."
 
 In re Metz,
 
 820 F.2d 1495, 1497 (9th Cir.1987) (collecting cases).
 
 See
 
 Bankruptcy Rule 8013.
 

 [3]
 

 . The bankruptcy court and district court here, like this court in
 
 In Re Madison Hotel Associates,
 
 749 F.2d 410, 424-25 (7th Cir.1984), distinguished between good faith in
 
 filing
 
 the petition and good faith in
 
 proposing
 
 the plan.
 
 Madison Hotel
 
 is a Chapter 11 reorganization case in which the debtor’s good faith was challenged at the time it filed its petition, before it had proposed a plan. The bankruptcy court considered the debtor’s pre-filing conduct when it made its "good faith" inquiry in deciding whether to dismiss the petition (as opposed to whether to confirm the plan). The bankruptcy court expressly found no lack of good faith in the initial filing. The bankruptcy court subsequently looked at other factors relevant to good faith in confirming the plan.
 

 A debtor’s "pre-petition" and “pre-plan” conduct could theoretically satisfy the same good faith test. The problem here is that, in contrast to
 
 Madison Hotel,
 
 the bankruptcy court did not make an adequate finding of good faith at either the petition or the plan stage. § 1307(c) provides that the bankruptcy court may convert a case under Chapter 13 to Chapter 7, or may dismiss a Chapter 13 case, “whichever is in the best interests of creditors and the estate, for cause, including ... denial of confirmation of a plan under section 1325.” Thus, under § 1307’s express language, a petition is to be rejected for the same reasons that a plan would not be confirmed, including a lack of good faith. In addition, the procedural schedules dictate that the good faith inquiry will often be the same: “Frequently, in the Chapter 13 context there will be an overlap between the two good-faith inquiries because the debtor’s plan must be filed within a very short time after the case is commenced. Bankr.Rule 3015.”
 
 In re March,
 
 83 B.R. 270, 275 (Bankr.E.D.Pa.1988);
 
 see
 
 H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 123 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin. News 5963, 6084 (“The debtor will usually
 
 file
 
 his plan with the petition commencing the case, but the bill gives him the opportunity, if he is pressed into chapter 13 in a hurry to avoid aggressive creditors, to develop and file his plan after the commencement of the case." (footnotes omitted)).
 

 In the case cited by the district court for a distinction between plans and petitions,
 
 In re Kopfstein,
 
 35 B.R. 656 (Bankr.N.D.Oh.1983), the
 
 bankruptcy court
 
 applied the same standards on a motion to dismiss the petition, those of
 
 Memphis Bank v. Whitman,
 
 692 F.2d 427 (6th Cir. 1982), that it would have applied to an opposition to confirmation of the plan. See also
 
 In re Easley,
 
 72 B.R. 948, 953 n. 5 (Bankr.M.D.Tenn.1987).
 

 [4]
 

 . For representative cases following this approach and evaluating the totality of the circumstances, see, e.g..
 
 In re Okoreeh-Baah,
 
 836 F.2d 1030, 1032-34 (6th Cir.1988);
 
 In re Metz,
 
 820 F.2d 1495, 1498 (9th Cir.1987);
 
 Chaffin, supra,
 
 816 F.2d at 1073;
 
 Neufeld
 
 v.
 
 Freeman,
 
 794 F.2d 149, 153 (4th Cir.1986);
 
 In re Estus,
 
 695 F.2d 311, 316-17 (8th Cir.1982) (factors include "type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7.");
 
 Sutliff, supra,
 
 79 B.R. at 154 (collecting cases);
 
 Hawes, supra,
 
 73 B.R. at 587-88 (no good faith where debtor’s Chapter 13 petition is "a mere litigating tactic — nothing more.’’). Compare
 
 Barnes v. Whelan,
 
 689 F.2d 193, 200 (D.C.Cir.1982) (in holding that a plan proposing nominal payments can meet the good faith requirement, the D.C. Circuit stated that good faith means "honesty of intention." According to the
 
 Barnes
 
 court, that test includes not proposing the plan for an improper purpose, which is equivalent to the
 
 Rimgale
 
 test.).
 

 [5]
 

 . S. 445, introduced by Sen. Dole on February 3, 1983, would have amended § 1328(a)(2) to prohibit the discharge of otherwise nondischargeable debts after completion of a Chapter 13 plan. This amendment was reported favorably by the Senate Committee on the Judiciary, S.Rep. No. 65, 98th Cong., 1st Sess. (1983), and passed by the Senate on April 27, 1983. 1983-1984 Cong. Index, Status of Senate Bills (CCH) 21,009. But Congress ultimately rejected this
 
 *819
 
 amendment. See 5
 
 Collier on Bankruptcy, supra,
 
 ¶ 1325.04(3] at 1325-17 n. 44.
 

 "An unsuccessful attempt to change the law does not by itself change the law in the other direction."
 
 In re Iowa R.R. Co.,
 
 840 F.2d 535, 538 (7th Cir.1988). Had Congress intended for Chapter 13 to discharge otherwise nondis-chargeable debts automatically and without the bankruptcy court considering how the debts arose, "we can be certain that there would have been hearings, testimony, and debate concerning consequences so wasteful, so inimical to purposes previously deemed important, and so likely to arouse public outrage."
 
 Kelly v. Robinson,
 
 479 U.S. 36, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986) (quoting
 
 TVA v. Hill,
 
 437 U.S. 153, 209, 98 S.Ct. 2279, 2309, 57 L.Ed.2d 117 (1978) (Powell, J., dissenting)).
 

 [6]
 

 . The State urges us to go further, relying upon
 
 Memphis Bank & Trust Co. v. Whitman,
 
 692 F.2d 427, 432 (6th Cir.1982). In that case, the Sixth Circuit suggested that where the debtor’s conduct is "dishonest," the bankruptcy court should not confirm the plan or, if the debtor’s conduct was "questionable” but not "dishonest," should require the debt to be paid in full:
 

 We should not allow a debtor to obtain money ... by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong ... through the Chapter 13 process runs the risk of turning otherwise honest ... shopkeepers into knaves.
 

 As the Sixth Circuit recently pointed out,
 
 Memphis Bank
 
 posited the 100 percent payment or denial of confirmation as two possible options, but not the only ones.
 
 Okoreeh-Baah, supra,
 
 836 F.2d at 1032 (rejecting the State’s reading of
 
 Memphis Bank
 
 and expressly adopting "totality of the circumstances” test). Any other reading of
 
 Memphis Bank
 
 would have to ignore Chapter 13's plain language.
 

 [7]
 

 . § 1325(a)(4), known as the "best-interests-of-creditors” test, still requires that the present value of the amount an unsecured creditor is to receive under the proposed plan be greater than or equal to what he would receive were the estate liquidated under Chapter 7 on "the effective date of the plan.” § 1325(a)(4). See generally 5
 
 Collier on Bankruptcy,
 
 ¶ 1325.05[2].
 

 [8]
 

 . As stated by the Eighth Circuit in
 
 Zellner:
 

 [OJur inquiry into whether the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13,” ... has a more narrow focus. The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.
 

 827 F.2d at 1227. The test of whether the debt- or "has unfairly manipulated the Bankruptcy Code" is equivalent to the traditional
 
 Rimgale
 
 test. See
 
 In re Goeb,
 
 675 F.2d 1386 (9th Cir.1982).
 
 Goeb
 
 expressly adopts the "unfairly manipulated the Bankruptcy Code” test, while favorably citing
 
 Rimgale
 
 and quoting its “abuse of the provisions, purpose, or spirit" standard. Indeed,
 
 Goeb
 
 complains that the
 
 Rimgale
 
 test is not broad enough because "even this generalization does not adequately reflect the range of relevant considerations." 675 F.2d at 1390 n. 9.
 
 Okoreeh-Baah, supra,
 
 cites
 
 Goeb
 
 as an example of a "flexible case-by-case approach.” 836 F.2d at 1033.
 

 [9]
 

 . If we did not consider the source of the debt in determining good faith, then we might question why we should consider it in determining “equal treatment” under § 1322(a)(3), see
 
 In re Furlow,
 
 70 B.R. 973, 978 (Bankr.E.D.Pa.1987). As we do consider the source, whether the inquiry is made under § 1322(a)(3) or § 1325(a)(3) does not really matter, but the inquiry has to be made.