**In re Stephen Allen SMITH and Sandra Jo Smith, Debtors.**

**Stephen Allen SMITH and Sandra Jo Smith, Appellants,**

v.

**ITT FINANCIAL SERVICES, Appellee.**

**Bankruptcy No. IP86–7263 WPV.**
**No. IP 87–852–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 5, 1989.

Lynn Murray, UAW Legal Services Plan, Kokomo, Ind., for appellants.

Robert A. Brothers, Indianapolis, Ind., for trustee.

David E. Rosselot, Kokomo, Ind., for appellee.

## ORDER ON APPEAL FROM DECISION OF BANKRUPTCY COURT

McKINNEY, District Judge.

This cause comes before the district court on the appeal of the debtors from an adverse decision of the bankruptcy court in a Chapter 13 proceeding. This appeal raises fundamental issues about the power of the bankruptcy court to raise certain matters *sua sponte* in a Chapter 13 proceeding. The issues raised have been briefed by the appellants and are ready for resolution.[1] For the reasons set forth below, the Court REVERSES IN PART and AFFIRMS IN PART the decision of the bankruptcy court and REMANDS this cause for further proceedings.

The Clerk of Court is to close the file with this District Court.

### I. FACTUAL BACKGROUND

The debtor-appellants filed their Petition in Bankruptcy under Chapter 13 (11 U.S.C.

---

1. Appellees have not briefed the issue despite being given more than adequate opportunity to do so.

§ 1301 *et seq.*, ) on December 8, 1986. On the same date the debtors filed their statement, schedules, and proposed Chapter 13 plan. On February 20, 1987, appellee ITT Financial Services filed its Proof of Claim as a fully secured creditor. On March 11, 1987, ITT filed its Objection to Confirmation of Debtor's Chapter 13 Plan, arguing that the debtor's plan was proposed in bad faith based on inadequate funding in that the plan did not commit future tax refunds of the debtors. Neither the trustee nor any unsecured creditors joined in ITT's objection. Thereafter the debtors filed an Amended Plan, and ITT renewed its objection.

After hearing oral argument, the bankruptcy court entered its decision rejecting the debtors' proposed plan on July 2, 1987. The court criticized the plan's failure to commit tax refunds to creditors and its failure to terminate at the conclusion of a definite calendar period.[2] The court granted a stay of its order pending the outcome of this appeal.

The issues before this District Court on appeal are: (1) whether the bankruptcy court erred in finding that the Plan was faulty for failing to include future tax refunds, and (2) whether the bankruptcy court erred in finding fault with the plan because of its termination provisions.

## II. STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, this District Court acts as an appellate tribunal and is governed by traditional standards of appellate review. Specifically, the Court "is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous." *In Re Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *In Re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington*, 74 B.R. 963, 965 (S.D.Ind.1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

■ Conclusions of law made by the bankruptcy court, however, must be reviewed *de novo*. *Excalibur Auto Corp.*, 859 F.2d at 457, n. 3; *Longardner & Associates, Inc.*, 855 F.2d at 459; *In Re Rice*, 90 B.R. 386, 390 (N.D.Ind.1988). And, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. *Graham*, 74 B.R. at 965.

## III. DISCUSSION

This appeal, by its very nature, presents this reviewing Court with a difficult task. Because appellee ITT is a secured creditor who will be provided for under the Plan whatever the outcome of this litigation, it

---

**2.** The full text of the bankruptcy court's opinion is as follows:

This matter comes before the Court on the confirmation of Debtors' Chapter 13 Plan and Objection thereto, filed by ITT Financial Services, and the Court having heard evidence and upon consideration of arguments of counsel, now finds as follows:

The Court agrees with the objecting creditor's contention that failure of the debtors to offer future tax refunds for the benefit of their plan represents potential abuse of the Chapter 13 remedy. On the facts of this case, debtors have the opportunity of using withholding taxes as a savings device to avoid making their best efforts in payment of available earnings to creditors.

Further, the plan must be rejected for its provision that the payments will terminate "the earliest of 48 months or when allowed secured claims *and 25% of allowed unsecured*

*claims are paid."* This latter provision is not authorized by the Code and presents an accounting nightmare for the Trustee in the administration of hundreds of cases under his supervision. How is he to "flag" this case so that he knows precisely when the 25% dividend is achieved? Does he bear personal liability if inadvertently he exceeds the 25% dividend?

Historically, Chapter 13 calls for the debtors best efforts for three years, or up to five years if the Court finds special circumstances. In rejecting this plan the Court emphasizes that the calendar term provisions of the Code should be maintained for sound policy reasons.

Debtors' plan is rejected and debtors are accorded 14 days to prepare a second amended plan.

*Entry Rejecting Chapter 13 Plan* (emphasis in original).

understandably has little interest in the practical outcome of this appeal. This indifference is evidenced by the appellee's failure to file any brief with this Court despite ample opportunity to do so. As a result, although the appellant's brief is thorough, this Court does not enjoy the benefits of having two competing litigants advocating their respective cases.

## A. The tax refund problem:

1. *The issue can be raised by a court only under § 1325(a):*

■ The confirmation of Chapter 13 plans is governed by 11 U.S.C. § 1325. Subsection (a) of § 1325 provides that the bankruptcy court must confirm the plan if six tests are met.[3] Congress amended § 1325 in 1984 and added a new subsection (b) to address certain specific issues.[4] Since the amendment, issues such as the amount of disposable income to be applied to debts are governed by § 1325(b), and under the express language of this subsection, only the trustee or the holder of an allowed *unsecured* claim may raise the issue by way of objection. Thus, neither the bankruptcy court nor the appellee in this case (a secured creditor) could raise the tax refund issue under the guise of § 1325(b)'s disposable income standard. This conclu-

sion is further supported by the only reported cases on the issue, as well as a leading national treatise.

■ For instance, in the case of *In Re Davis*, 68 B.R. 205 (Bkrtcy.S.D.Ohio 1986), the court held that while bankruptcy courts may properly raise issues of good faith under § 1325(a) *sua sponte*, they may not raise issues of disposable income on their own absent objection from an *unsecured* creditor. *Davis*, 68 B.R. at 208–209. The *Davis* court based its holding on the express language of § 1325(b) which "evidences a specific Congressional determination that the requirement for compliance with the standards of this section can only be raised by a restricted class of claimants." *Id.* at 210. *See also, In Re Tracey*, 66 B.R. 63, 65 (Bankr.D.Md.1986) (secured creditor has no standing to object on ground that debtors have not devoted all disposable income to the plan, and the court cannot raise it *sua sponte;* only the trustee or an unsecured creditor can raise the matter); L. King, *Collier on Bankruptcy* ¶ 1325.08, 1325–48 (2d ed. 1988) (§ 1325(b) issues may only be raised by trustee or unsecured creditor).

The *Davis* court did hold, however, that the bankruptcy court could still raise good

---

**3.** Subsection (a) provides as follows:

Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 23 of title 28 or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the

plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a)

**4.** This subsection provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) The value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b).

faith issues under § 1325(a) on its own. The court there reasoned that "it would be absurd to hold that a bankruptcy court is powerless to prevent a fraud unless first requested by an interested party." 68 B.R. at 209. *Cf., In Re Moseley,* 74 B.R. 791, 798 n. 11 (Bkrtcy.C.D.Cal.1987) (noting that court has power to revoke confirmation *sua sponte* if plan was not filed in good faith). Thus, the issue of good faith may be raised by the bankruptcy court *sua sponte.*

An initial question in this case, then, is whether the bankruptcy court's decision that the tax refund aspect of the debtor's plan was improper was made under subsection (a) regarding good faith, or instead was pursuant to subsection (b) of § 1325 relating to disposable income. If the bankruptcy court's determination could properly be categorized as the former, then the court had the authority to do so (with the question of the merits of such a determination to then be decided). If the latter, the court was without such power.

This issue is made more difficult by the fact that the bankruptcy court did not state the authority upon which it made its determination on the tax refund issue. The court stated, "On the facts of this case, debtors have the opportunity of using withholding taxes as a savings device to avoid making their best efforts in payment of available earnings to creditors." The language used by the court ("to avoid making their best efforts") makes it seem as though the court was making a determination of the debtors' good faith under § 1325(a). Because the bankruptcy court lacked the authority to make any determination on this issue under § 1325(b), and because the "best efforts" language has been commonly used in good faith cases, this Court will assume that the bankruptcy court was, in fact, making a good faith determination. As such, the question is whether the lower court's finding of bad faith under § 1325(a) can be sustained on the merits. In resolving this matter, this Court is bound by the clearly erroneous standard of review as a determination of good faith is a finding of fact. *In Re Smith,* 848 F.2d 813, 816 n. 2 (7th Cir.1988).

2. *The bankruptcy court relied on an improper standard in making its good faith determination:*

Prior to 1984, the "good faith" test of § 1325(a) was a source of frequent litigation. The term is not defined in the Code nor in legislative history, "and courts have said that no precise or comprehensive definition is possible." *Smith,* 848 F.2d at 817. Thus, there are hundreds of "good faith" decisions that have produced "inconsistent results within judicial districts and across the circuits." *Smith,* 848 F.2d at 817, (*quoting In Re Easley,* 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987) (collecting cases).

Nonetheless, in the Seventh Circuit, the standard has long been that the totality of the circumstances is to be considered on a case-by-case basis. *In Re Rimgale,* 669 F.2d 426, 432 (7th Cir.1982). Just last June the Seventh Circuit, writing through Judge Manion, had opportunity to revisit this standard. In *Smith,* 848 F.2d 813, the court reconfirmed that the standard in this Circuit continues to be the "totality of the circumstances." Under this test, a number of factors are to be considered including the debtor's motive for seeking relief, the circumstances under which the debts were incurred, whether the plan states debts and expenses accurately, and whether the payments indicate a "fundamental fairness in dealing with one's creditors." *Id.* at 817. Such questions force the bankruptcy court to examine "whether or not under the circumstances of the case there has been abuse of the provisions, purpose, or spirit of [Chapter 13]." *Id.* at 818.

The *Smith* court specifically noted, however, that there have been several amendments to the Code which alter the traditional good faith test in some cases. The Seventh Circuit wrote, "Before holding that *Rimgale,* [a case decided in 1982], controls this matter, ... we must confirm that the 'totality of the circumstances' test continues to be valid now that Congress has enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984...." *Smith,* 848 F.2d at 819. The court then approved of the traditional test, but found

that it had, in fact, "been narrowed ... by the few specific provisions of [the Amendments] which now cover situations which fell within *Rimgale's* analysis." *Id.* at 820.

One of these provisions, the court wrote, is § 1325(b), which "shows that a plan proposed in good faith does not require any specific amount or percentage of payment to unsecured creditors." *Smith,* 848 F.2d at 820. Thus, the Seventh Circuit concluded, after the enactment of § 1325(b), the bankruptcy court no longer looks at the amount unsecured creditors will receive as an element of the totality of circumstances in the good faith analysis of § 1325(a)(3). 848 F.2d at 820.

The *Smith* court explained this change at length, writing:

Before [the 1984 Amendments], bankruptcy courts, in determining 'good faith,' looked at whether the plan proposed substantial or meaningful repayment to unsecured creditors. [The 1984 Amendments] change[] that. Now, § 1325(b) states that if an unsecured creditor objects to confirmation, the bankruptcy court may not approve the plan unless that creditor is to receive full payment, § 1325(b)(1)(A), or alternatively, the debtor meets the 'ability to pay' test, that is, he commits all of his projected disposable income to the plan for three years, § 1325(b)(1)(B). A plan otherwise confirmable will be confirmed even if it provides for minimal (or no) payments if those payments meet the 'ability to pay' test.

*Smith,* 848 F.2d at 820.

■ Thus, after the 1984 addition of § 1325(b), the bankruptcy court is not to look at the amount that the unsecured creditors will receive in a voluntary Chapter 13 plan in making its determination of good faith under § 1325(a)(3). Congress specifically provided the unsecured creditor with protection under the terms of § 1325(b), and as demonstrated previously, only the unsecured creditor can raise the matter to protect itself.

This same conclusion was reached in the case of *In Re Pierce,* 82 B.R. 874 (Bkrtcy.S. D.Ohio 1987), a well-reasoned opinion by the Bankruptcy Court for the Southern District of Ohio. In *Pierce,* the bankruptcy court took note of the 1984 addition of § 1325(b) and its effect on the good faith analysis. The court's reasoning is worthy of lengthy quotation here:

Prior to the passage of [the 1984 Amendments], many courts used the so-called 'good faith test' to compel a minimum repayment as a condition of confirmation. Other courts, using the good faith standard as a springboard, formulated a 'best efforts test,' which judicially engrafted the best efforts of § 727(a)(9) into the Chapter 13 statutory scheme. Use of the Code's good faith standard represented a statutory basis for many courts to require a minimum level of payments in cases where the courts perceived an abuse of the Chapter 13 remedy by debtors.

Congress responded to the courts' disparate application of the good faith standard—as a means of regulating the amount of payments and the length of Chapter 13 plans—by considering a number of proposals which would have required a good faith effort by a debtor to provide payments to creditors consistent with the debtor's ability, including a so-called 'best efforts test.' *Instead, Congress adopted the 'ability-to-pay' provisions of § 1325(b) ... which provide[] that the amount a debtor could reasonably afford to pay would become both a floor and a ceiling for Chapter 13 plan payments."* * * * It has been commented that:

Through this ability-to-pay test, Congress hoped to create a concrete standard which would both eliminate the disparity between the judicial districts and be consistent with the basic consumer credit theory of extending credit based on future income.

Despite some continuing disparity by the courts in the interpretation of the requirements of § 1325(a)(3) and § 1325(b) concerning the percentage of repayment, it has been observed that the *amount of a debtor's plan payments no*

*longer should be considered as a factor in the Code's good faith test. . . .*

*Pierce,* 82 B.R. at 878–879 (citations omitted, emphasis added).

Thus, the *Pierce* court concluded, the "ability-to-pay standards of § 1325(b), and their accompanying legislative history, demonstrate ... that the percentage of repayment in a Chapter 13 plan is not appropriately considered as an element of good faith. . . ." 82 B.R. at 879. *Accord, Education Assistance Corporation v. Zellner,* 827 F.2d 1222, 1226–1227 (8th Cir.1987) (§ 1325(b) criteria narrow the traditional good faith analysis); *In Re March,* 83 B.R. 270, 274 (Bkrtcy.E.D.Pa.1988) ("By adding new section 1325(b), Congress clearly limited the factors which may be considered relevant under the good faith test of 1325(a)(3).

The commentators further support this conclusion. *See, e.g.,* L. King, *Collier on Bankruptcy* ¶ 1325.04, 1325–10 to 1325–18 (2d ed. 1988); *Bankruptcy Reorganizations Under Chapter* 11, 12, & 13, p. X–4 (ICLEF 1987) (noting that many good faith issues were resolved by the addition of § 1325(b)).

▆▆▆ In this case, then, the bankruptcy court below could not consider the tax refund issue as part of its good faith analysis because in this instance, that issue relates only to the amount of payment that the unsecured creditors will receive.[5] The secured creditors were to be fully provided for under the plan, and the tax refund issue could only affect the remaining allowed unsecured creditors. Because there is no other evidence of bad faith in this case, the bankruptcy court's implicit find-

ing of bad faith must be reversed as clearly erroneous.[6]

Accordingly, to the extent that the bankruptcy court's rejection of the proposed plan was based on the tax refund issue, it was in error and cannot be sustained on those grounds.

B. The bankruptcy court properly decided that the termination provisions were unacceptable:

The second issue relates to the plan's termination provision. The debtors proposed to continue payments for 48 months or until all secured claims and 25% of allowed unsecured claims are paid. The bankruptcy court rejected the plan on the ground that this termination provision "is not authorized by the Code and presents an accounting nightmare for the Trustee. . . ."

Once again, meaningful appellate review of this decision is difficult because of the lack of competing advocacy on the issue. The debtors surmise that the bankruptcy court's decision was based on an erroneous application of § 1325(b). It is understandable why the debtors make this argument, for if this were, in fact, a § 1325(b) issue, the bankruptcy court would have lacked the power, as discussed above, to decide the matter absent objection from an unsecured creditor or the trustee. The question, then, is under what authority the bankruptcy court made its determination.

This Court is unable to locate any authority that addresses this precise scenario. Yet, there appear to be two possible sources of authority upon which the decision below can be sustained. First, it is possible that the bankruptcy court was

---

**5.** The Court notes that the issue of of tax refunds has been considered as a § 1325(b) element in several cases. *See In Re Rhein,* 73 B.R. 285 (Bkrtcy.E.D.Mich.1987); *In Re Red,* 60 B.R. 113 (Bkrtcy.E.D.Tenn.1986). The court below, however, was without power to consider this as a § 1325(b) issue *sua sponte,* as discussed previously.

**6.** It should be noted that § 105 of the Code also cannot provide the authority to uphold the bankruptcy court's decision on the tax refund issue. Section 105 states that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title." 11 U.S.C. § 105(a). However, the power under § 105 is not unlimited, and where a specific section of the Code such as § 1325(b) commits the raising of an issue to a specific party, the court cannot raise the matter under the guise of § 105 unless it was necessary "to prevent an abuse of process." § 105(a). This Court finds that there is no evidence in the record that would support the finding of an abuse of process here. Accordingly, § 105 could not provide the foundation for the bankruptcy court's decision on the tax refund issue.

making its finding under the good faith standard of § 1325(a)(3). Indeed, there is one reported decision that indicates in dicta that a proposed plan may be found deficient for want of good faith if it places "an undue burden on the trustee's administration." *In Re Ramus*, 37 B.R. 723, 727 (Bkrtcy.N.D.Ga.1984).

 Additionally, the bankruptcy court could have acted under the authority of § 105(a), which allows the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Even though § 105 is not without limits, *see, e.g., Federal Land Bank of Omaha v. Fischbach*, 72 B.R. 245, 247 (D.S.D.1987), the court below could have been acting under this provision by finding its rejection of the plan "necessary or appropriate" under the Code. That is to say, the court could have reasonably concluded that the administration of Chapter 13 cases by the Trustee would be unjustifiably impeded by the debtors' proposed plan. It must be remembered that the bankruptcy court is a court of equity, and thus has the powers of a court of equity. *In Re Aurora Cord and Cable Co., Inc.*, 2 B.R. 342, 347 (Bkrtcy.N.D.Ill. 1980). As such, a debtor coming before the bankruptcy court must do equity in seeking equitable relief. The bankruptcy court in this instance could properly require the debtor to convert its percentages to dollar amounts or otherwise make the administration of the case more practical.

Accordingly, because the lower court had the authority to require the termination provisions to be more reasonable for administration purposes, and because the findings of the bankruptcy court in this regard were not clearly erroneous, this aspect of the lower court's decision is affirmed. The bankruptcy court properly rejected the proposed plan on this basis.

This cause is remanded to the bankruptcy court for further proceedings consistent with this opinion. The clerk of this Court shall close this file.

IT IS SO ORDERED.