**In re Zendelmar M. TORRES, Debtor.**

**Bankruptcy No. 93–53851–ASW–OR.**

United States Bankruptcy Court, N.D. California.

March 11, 1996.

**320**

Clark A. Miller (argued), Salinas, CA, for Debtor Zendelmar M. Torres.

Leon Jon Bonney (argued), Office of Duncan H. Kester, Campbell, CA, for Chapter 13 Trustee Duncan H. Kester.

Sblend Sblendorio (argued), Levy, Greenfield & Davidoff, San Jose, CA, for Creditor Max Recovery, Inc.

## MEMORANDUM DECISION DENYING MOTION TO MODIFY PLAN AFTER CONFIRMATION

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

### INTRODUCTION

Before the Court is a motion by Max Recovery, Inc. ("Creditor") seeking to modify a confirmed Chapter 13 plan, which motion is opposed by the Debtor ("Debtor"). Creditor is represented by Sblend A. Sblendorio, Esq. of Levy, Greenfield & Davidoff; Debtor is represented by Clark A. Miller, Esq. Duncan H. Kester, the Chapter 13 Trustee, is represented by Leon Jon Bonney, Esq. Briefing and oral argument have been completed.

### I.

### BACKGROUND

Debtor filed a petition under Chapter 13 of Title 11 on June 14, 1993.[1]

Creditor is the successor in interest to Household Credit Services. That entity filed a proof of unsecured claim for the sum of $2,161.10 on August 2, 1993, which claim was allowed by an Order filed January 4, 1994.[2]

Debtor's plan was confirmed August 9, 1993. The plan does not specify a term; rather, it states that Debtor "shall pay to the trustee the sum of $570.00/mo. until all allowed claims are paid" and, as to unsecured claims, provides that they "shall be paid 35 cents on the dollar".

Only one objection to confirmation was filed, that of the Trustee, filed July 19, 1993,

---

**1.** This case, having been filed prior to the effective date of amendments made October 22, 1994, is governed by Title 11, United States Code ("Bankruptcy Code") as that statute provided prior to such amendments; unless otherwise noted, all statutory references are to the pre-amendment statute.

**2.** Creditor claims to be also the successor in interest to Wells Fargo Bank, but no proof of claim was ever filed by, or on behalf of, that entity, although Wells Fargo Bank was scheduled as both a secured and unsecured creditor.

and contending that Debtor's Schedule C ("Property Claimed As Exempt") included an exemption claim to which Debtor was not entitled; that objection was withdrawn on July 28, 1993, after Debtor amended his Schedule C on July 27, 1993, to delete the subject claim of exemption.

The Trustee informed the Court and the parties during oral argument on the instant motion that, by September 27, 1995, the total payments made by Debtor to the Trustee were sufficient to cover all expenses and claims provided for by the plan as confirmed (*i.e.*, to pay all administrative expenses, allowed secured claims, and allowed priority claims in full, and to pay 35% of all unsecured claims that had been filed and allowed). If not modified, the plan would thus be completed by its terms in September 1995, after twenty-seven monthly payments were made to the Trustee. Creditor's motion seeks to modify the confirmed plan to provide that payments be made to the Trustee for a minimum period of thirty-six months, which would require Debtor to make nine more monthly payments of $570.00 each, totalling $5,130.

The instant motion was filed in June 1995, when twenty-four payments had been made and three remained to be made in order to complete the plan by its terms as confirmed (without modification). The parties have stipulated that entry of Debtor's discharge shall be suspended until after the Court has ruled upon this motion.

## II.

### *MINIMUM TERM*

■ There is no blanket requirement in the Bankruptcy Code that provides for all Chapter 13 plans to be of any specific minimum duration. The circumstances under which the term of a Chapter 13 plan is required to be of a minimum duration are governed by 11 U.S.C. § 1325(b)(1), which provides:

*If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan,* then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. [emphasis supplied]

While 11 U.S.C. § 1322(c) provides that the term of a Chapter 13 plan cannot extend beyond a maximum period of five years, no provision of the Bankruptcy Code imposes a minimum length upon a plan except § 1325(b)(1)(B). By its own terms, that subsection is not invoked unless an objection to confirmation is made by one statutorily authorized to do so (the Trustee or an unsecured creditor with an allowed claim).[3] In the absence of an objection to invoke § 1325(b)(1)(B), a plan could properly be confirmed that expressly provided for a term of less than three years, as long as the Court could find that, under the circumstances of the case, the plan was proposed in good faith and met all other requirements of § 1325(a).

In this case, a pleading styled as an objection to confirmation was filed by the Trustee, and Creditor contends that this operated to bring § 1325(b)(1)(B) into play and impose a thirty-six month minimum term requirement upon this plan. However, the "objection" filed by the Trustee was withdrawn and was therefore of no force and effect. Moreover, even if it had not been withdrawn, the Trustee's objection was not based upon any cognizable legal ground for denial of confirmation, and specifically not upon Debtor's failure to devote all disposable income to the plan for a period of at least three years.

---

**3.** The grounds for objecting to confirmation that are provided by § 1325(b) cannot be raised by the Court *sua sponte, In re Davis,* 68 B.R. 205 (Bkrtcy.S.D.Ohio 1986) (*"Davis "*); nor can they be raised by a secured creditor, *In re Tracey,* 66

B.R. 63 (Bkrtcy.D.Md.1986); and *see, In re Smith,* 100 B.R. 436 (S.D.Ind.1989) and 5 *Collier on Bankruptcy* (15th ed., 1995) (*"Collier "*) ¶ 1325.08[2].

In any event, confirmation of the Debtor's plan in this case was *res judicata* as to the issue now raised by Creditor.

### A. Withdrawal of Trustee's Objection

■ Creditor's position depends entirely upon the Trustee's objection to confirmation, not upon any objection filed by Creditor.[4] The Trustee's objection was *withdrawn* and therefore cannot, as a matter of law, operate to invoke the requirements of § 1325(b)(1)(B).

### B. Trustee's Objection to Confirmation

■ Even assuming *arguendo* that a withdrawn objection could somehow operate to invoke the requirements of § 1325(b)(1)(B), an assumption that the Court views as remote, the Trustee's pleading did not constitute an objection to confirmation in the sense of advancing a proper ground upon which confirmation of a Chapter 13 plan could be denied. The Trustee's pleading is entitled "TRUSTEE'S OBJECTION TO CONFIRMATION" and recites:

> Duncan H. Kester, Trustee in the above entitled matter, objects to the confirmation of this Plan for the following reasons:

> An amended Schedule C—Property Claimed Exempt is needed as the $75,-000.00 homestead exemption was taken on the separate case 93–5–2739 ASW–OR, Rose Torres, spouse of the above referenced debtor. Therefore, the debtor is not allowed to exempt any amount in reference to the Montgomery Street property.

Confirmation of a plan is mandatory if it meets each requirement of § 1325, *In re Alexander,* 670 F.2d 885 (9th Cir.1982). Assuming good faith, merely claiming an exemption to which one is not entitled is not in and of itself a ground for denial of confirmation; conversely (still assuming good faith), being entitled to all of the exemptions one has claimed is not a pre-requisite to confirmation under § 1325. Had the Trustee alleged bad faith in connection with the exemption claim, or gone on to say that unsecured creditors would receive more in a Chapter 7

case (with no homestead exemption available) than the 35% that Debtor was proposing to pay them under his plan, then an objection to confirmation based on § 1325(a)(3) (requiring good faith) or § 1325(a)(5) (the Chapter 7 comparison) would have been made out; but the Trustee did not allege bad faith, nor did he state (or even imply) that the Chapter 7 test was affected by the exemption claim. It is apparent from Debtor's Schedule A of real property assets that the facts would not have supported an objection under § 1325(a)(5) had one been made based on the lack of entitlement to a homestead exemption, since Debtor's residence is shown to have been significantly over-encumbered by deeds of trust and his interest in it is shown to have been only 50%, so that the unavailability of a homestead exemption would not have altered the amount that creditors would have received under Chapter 7. The pleading filed by the Trustee could not have been sustained as an objection to confirmation because it was supported by no legal grounds. The pleading did not in fact function as an objection to confirmation, since it was withdrawn prior to hearing, without the plan being amended or otherwise affected by it.

### C. No Applicable Objection to Confirmation

■ Assuming, *arguendo,* that the Trustee's "objection" was an actual objection to confirmation, the fact remains that it was not based upon the grounds that are provided by § 1325(b)(1)(B): that the debtor must devote all disposable income to the plan for a minimum period of three years. Creditor relies upon the express language of the statute, which merely provides that someone must "object[ ] to the confirmation of the plan" and does not specify that the objection must be based upon failure to devote all disposable income and/or failure to provide a term of at least three (3) years. Creditor would have it that *any* objection to confirmation suffices to invoke § 1325(b)(1)(B), no matter how far removed it might be from the subject matter of that subsection. The "objection" upon which Creditor relies here is about as remote

---

4. It is far from clear that anyone other than the party objecting to confirmation can rely upon

§ 1325(B)(1)(b). The Court does not reach that issue because it is unnecessary to do so.

from the subject of disposable income and/or a minimum term as it is possible to be, having no connection of any kind with these topics, yet Creditor urges that this "objection", or any conceivable objection that might ever be made, should operate to inject these additional criteria into the list of pre-requisites to confirmation. Not surprisingly, Creditor cites no authority for this proposition, nor has the Court found any. Such legislative history of § 1325(b)(1)(B) [5] as exists sheds no light on whether the objection required was intended by Congress to be a specific one concerning disposable income and/or term length, or just a general one based on any ground at all. Extended to its logical conclusion, the latter interpretation could support a finding that, if any objection to confirmation were made, on any basis whatsoever, then that objection could be cured by a debtor simply complying with § 1325(b)(1)(B) and proposing to devote all disposable income to the plan for at least three years. For example, such a result arguably could preclude the Court from considering an objection based on bad faith once a debtor agreed to comply with § 1325(b)(1)(B), a result that would deprive the Court of its right and duty to determine good faith in the context of the totality of the circumstances, *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988), *and see, Davis*. This Court declines to adopt Creditor's interpretation of what kind of objection is necessary to invoke § 1325(b)(1)(B), and finds that, in order for that subsection to become applicable to confirmation, an objection to confirmation must be made alleging that a debtor is not devoting all disposable income to the plan for a minimum period of three years.

# III.

## RES JUDICATA EFFECT OF CONFIRMATION

■ A confirmed plan is *res judicata* as to all justiciable issues that were, or could have been, determined at confirmation, *In re Evans*, 30 B.R. 530 (9th Cir. BAP 1983) ("*Evans* ").[6] This general principle is subject to the limitation imposed by *In re Harlan*, 783 F.2d 839 (9th Cir.1986) ("*Harlan* "), applicable to a case in which a plan suggests no basis on which to object to confirmation.

■ Creditor argues that, when this case was filed, it was not apparent that it could be completed in less than three years, if the term was calculated with reference to the total amount of claims as scheduled; the reason that the plan has in fact been completed in only twenty-seven months is that not all creditors filed claims, a development that could not be known to anyone at the outset. Therefore, Creditor contends, neither Creditor nor the Trustee had any reason to object to confirmation on the basis that the plan did not meet the minimum term requirement of § 1325(b)(1)(B), because it was plain that more than three years would be needed to pay 35% to all scheduled creditors (Debtor's attorney states that his calculations indicated the term would run for thirty-eight months).

Creditor's argument is not persuasive. The unambiguous language of this plan served to put the Trustee and all creditors on notice that Debtor was *not* proposing a term of any specific length, so that it obviously could turn out to be more or less than three years. Indeed, the typeset model plan used in this Court and in this case reads as print-

---

**5.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, added § 1325(b) to the Bankruptcy Code, with Congress adopting it "almost verbatim from a proposal made by the National Bankruptcy Conference at hearings before the House Judiciary Committee. [footnote omitted] That proposal and its explanation, therefore, constitute the most significant legislative history available in interpreting the new provision. [footnote omitted]". *Collier*, at 1325–63. This legislative history has been described as being "singularly vague and unenlightening", *In re Jones*, 55 B.R. 462, 465 (Bkrtcy.D.Minn.1985).

**6.** Although § 1329 does permit post-confirmation modification, the *res judicata* effect of confirmation cannot be avoided by seeking modification of a plan provision that was not objected to at the time of confirmation. Post-confirmation modification that is sought by one other than the debtor requires a showing of substantial change in the debtor's income or expenses that was unanticipated at confirmation, *In re Anderson*, 21 F.3d 355 (9th Cir.1994) and confirmation should be considered *res judicata* with respect to all other matters, 5 *Collier*, ¶ 1329.01[b].

ed: "... the debtor(s) shall pay to the trustee the sum of $__ for __ months or until all allowed claims are paid." In completing this form, Debtor entered "570.00/mo." on the line following the dollar sign, then crossed out the language "for __ months or", so that the clause read "... the debtor(s) shall pay to the trustee the sum of $570.00/mo until all allowed claims are paid." The clear meaning of this plan provision is that, once all allowed claims are paid, Debtor shall cease making payments to the Trustee, whether that happens in three years or more, or in a shorter period of time. If Debtor had completed the printed plan form to read that he would make monthly payments to the Trustee "for 36 months" and crossed out the language that said "or until all allowed claims are paid", Debtor would have bound himself to maintain payments to the Trustee for a full three years, even if that resulted in a distribution of more than 35% due to some creditors not filing claims. This plan, as the form was completed by Debtor and confirmed by the Court, unambiguously announced that payments to the Trustee were going to be made only as long as necessary to permit all allowed claims to be paid at the rate of 35%, and it imparted notice to all that a minimum term of three years was not being proposed. Anyone—Trustee and/or creditors—who disliked the absence of a three year minimum term could have objected to confirmation on that basis to invoke § 1325(b)(1)(B) and seek amendment of the plan to comply with that subsection.

It is important to emphasize that a Chapter 13 plan constitutes a contract, *Evans.* Many of its provisions are negotiable, and debtors have choices in the types of plans they propose. In this connection, it is not unusual for some scheduled creditors to file no claims in bankruptcy cases. Nor is it unheard of for Courts to allow late claims. Thus, depending upon the circumstances, creditors may be better served by a plan provision that guarantees a specific percentage payout on their claims (here, 35%) than by a plan that ensures only a specific minimum term.

Moreover, debtors may propose to commit funds to plans that would not otherwise be available to creditors, such as exempt funds or gifts from relatives or friends. For example, there is nothing necessarily inappropriate in a debtor proposing a one month plan that provides for payment of a large dividend on creditors' claims out of exempt funds. The statute is designed to provide flexibility to debtors and creditors. In this general context, § 1325(b)(1)(B) operates as a safeguard for creditors. *If* a creditor chooses to object that a debtor is not committing all disposable income for a minimum of thirty-six months, *then* the Court cannot confirm the plan. Once the plan is confirmed, it is *res judicata* as to the § 1325(b)(1)(B) issue.

In the case before the Court, one can only speculate as to why Creditor did not object to confirmation of Debtor's plan. Creditor may have decided that it would be better served by Debtor's plan, which guaranteed a 35% minimum payment on claims rather than a minimum term requirement. Or, perhaps Creditor chose to ignore the issue, or to rely on its own calculations of scheduled claims in anticipating that payments would have to be made for at least three years, which exposed Creditor to the risk of what has now occurred. In any event, it was within Creditor's power to eliminate that risk by seeking to force Debtor to commit to a minimum term that might ultimately have the effect of increasing the percentage paid to creditors filing claims, and the time for Creditor to take that step was during the plan confirmation process.

In sum, the fact that this plan might have been completed in less than thirty-six months was obvious from the language of the plan. *Harlan* is not applicable. *Evans* is controlling.

## IV.

### *MODIFICATION*

Other arguments were advanced by the parties in support of, and in opposition to, Creditor's motion, which are unnecessary to reach in light of the findings that § 1325(b)(1)(B) does not apply to impose a minimum term upon the confirmed plan in this case, and that confirmation is *res judicata* as to the term of this plan. The Court

will, however, comment on one issue that appeared to be of particular interest to the parties and the Trustee, which had arisen in a case decided by the Honorable James R. Grube, United States Bankruptcy Judge for the Northern District of California, in an unpublished opinion.[7] In that case, the confirmed Chapter 13 plan provided for payment of 10% to unsecured creditors and, two months after confirmation, the debtors withdrew funds from their exempt retirement account and tendered to the Trustee an amount sufficient to pay their creditors 10%. The Trustee moved to modify the confirmed plan, to treat the amount withdrawn from the retirement account as additional disposable income and recalculate the percentage to creditors as 54%. Judge Grube denied modification, holding that, by tendering funds totalling 10% of claims, the debtors had completed the performance required of them under the confirmed plan and were absolutely entitled by such performance to receive their discharge; further, Judge Grube noted that § 1329(a) permits plan modification only while payments remain to be made under the plan, not after payments have been completed. Both bases for Judge Grube's holding (and the cases cited by Judge Grube in support of his conclusion) depend upon modification being sought after a debtor has completed performance under the terms of a confirmed plan. In this case, Creditor's motion was filed approximately three months before Debtor had made all payments called for by the confirmed plan, although hearings were conducted post-completion and the motion is ruled upon post-completion. The rationale of Judge Grube's decision and those cited by him is not dispositive in a case such as this, where Creditor sought modification at a time when Debtor was still in the process of performing under his confirmed plan.

## CONCLUSION

For the foregoing reasons, the motion to modify the confirmed plan in this case is denied.

Counsel for Debtor shall submit a form of order so providing, after review by counsel for Movant and counsel for the Trustee as to form.

---

7. *In re McRann,* Case No. 92–55548–JRG, Order filed November 5, 1993.