**The GREAT SOUTHERN CO., et al., Plaintiffs–Appellants,**

v.

**Alfred A. ALLARD, Defendant–Appellee.**

**Nos. 96 C 3826, 95 B 13935.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 9, 1996.

Laurence H. Kallen of Foster & Kallen, Chicago, IL, for Plaintiffs–Appellants.

Richard G. Larsen of Myler, Ruddy & McTavish, Aurora, IL, for Defendant–Appellee.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Great Southern Company and Great Entertainment Merchandise, Inc. (collectively "Great Southern") appeal Bankruptcy Judge John Squires' May 9, 1996 memorandum opinion (the "Opinion," 196 B.R. 402),[1] which (1) avoided Great Southern's pre-petition judicial lien and (2) denied Great Southern's objection to the confirmation of the plan ("Plan") proposed by debtor Alfred Allard ("Allard") under Bankruptcy Code ("Code") Chapter 13.[2] For the reasons discussed in this memorandum opinion and order, the Bankruptcy Court's decision is affirmed.

*Facts* [3]

In January 1995 Great Southern obtained a $140,441.04 judgment against Allard for trademark violations (Opinion at 405). Two months after Great Southern's suit was filed but over a year before the entry of judgment, Allard and his wife transferred the title to their residence from a joint tenancy to a tenancy by the entirety (*id.* at 406).[4] Upon obtaining its judgment in the trademark case, Great Southern established a judicial lien on Allard's residence by filing a memorandum of judgment with the Kane County Recorder of Deeds (*id.*).

On July 12, 1995 Allard filed his Chapter 13 case, listing only two creditors' claims: Great Southern's judgment and $2,252.80

owed to the lawyers who defended him in the trademark action (Opinion at 405). Allard's Chapter 13 Plan proposes to pay approximately 23% of that debt over the course of 60 months (*id.*).

This appeal addresses the proper treatment under Chapter 13 of Great Southern's judicial lien on Allard's residence. Allard claimed his one-half interest in the residence (an interest worth some $120,000) as exempt under Section 522(b) and then moved successfully to avoid the lien under Section 522(f)(1)(Opinion at 406). Great Southern Mem. 13–15 and 20–21 objects to such avoidance, arguing that because the Code incorporates state law for exemptions the lien should remain on the residence, albeit with the restriction that Great Southern cannot foreclose on the property as long as the ownership remains a tenancy by the entirety.

Great Southern also charges that Allard did not file his Chapter 13 plan in good faith, claiming (1) that Allard filed under Chapter 13 for the sole purpose of avoiding debt that would have been nondischargeable in Chapter 7 proceedings and (2) that Allard misrepresented his assets and income in the Plan and in his testimony (see Opinion at 407). Finally, Great Southern Mem. 21–22 contends that its interests were not properly considered in the Section 1325 best-interest analysis because Allard's tenancy by the entirety interest should have been viewed as a part of the estate in a hypothetical Chapter 7 proceeding.

*Standards of Review*

Dual standards of review apply to any bankruptcy appeal such as this one. To the extent that the Bankruptcy Judge has made findings of fact, they may not be set aside

---

**1.** Citations to the Opinion will take the form "Opinion at—," reflecting the page number in 196 B.R.

**2.** Citations to the Code will take the form "Section—," reflecting the Title 11 numbering.

**3.** This section is derived from the *Facts and Background* set out in Opinion at 405–07.

**4.** Whether that conveyance was fraudulent under the Code is the subject of a separate adversary proceeding. This opinion neither makes nor implies any determination on that score.

unless clearly erroneous (Fed.Bankr.R. ("Rule") 8013). Questions of law, however, are subject to de novo review (*In re Evanston Motor Co.*, 735 F.2d 1029, 1031 (7th Cir.1984)).

Unfortunately, to a major extent Great Southern treats this entire appeal as though it came here de novo. It reargues a host of evidentiary (including testimonial) issues afresh, ignoring the principle that Judge Squires and not this Court was the finder of fact. As this opinion makes plain, this Court rejects the invitation to second-guess the judicial officer who saw and heard the witnesses, who had and exercised the opportunity to judge the documentary evidence in light of the testimony, and who was not relegated (as is this Court) to a cold paper record. There is a very good reason for the major deference conferred by Rule 8013 on the extraordinarily able judges who make up this District's Bankruptcy Court—and this Court honors that concept not only as to Judge Squires' finding that Allard proposed the Plan in good faith (*In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992)) but also in every other facet of the Opinion that involves a factual determination.

### Avoidance of Lien

 Great Southern may not at this stage challenge the status of Allard's property as exempt pursuant to Rule 4003(b), which allows a creditor or trustee 30 days from the conclusion of the creditors' meeting in which to object to the exemption. Strict adherence to that deadline is mandated both by the literal language of Section 522(*l*) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt") and by the definitive construction of that language in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992), which held that after the 30–day limit a creditor "cannot contest the exemption at this time whether or not [the debtor] had a colorable statutory basis for claiming it." Because Great Southern failed to object within the permissible time period, under *Taylor* it may no longer challenge the validity of the exemption.

 In an effort to avoid the devastating impact of *Taylor*, Great Southern says that it does not quarrel with the *existence* of the exemption, but rather with its claimed *effect*: Great Southern Mem. 14–15 objects to Allard's avoidance of the judicial lien on the exempt property and posits that the property is only "partially protected from the reach of creditors" under Illinois law as incorporated by the Code. Judge Squires rejected that attempted distinction, concluding that because Great Southern had failed to make a timely objection it was precluded from any such challenge by Rule 4003(b) and *Taylor* (Opinion at 408).

Great Southern's effort to characterize its challenge as outside the scope of Rule 4003(b) and *Taylor* fails utterly. To that end its attempted reliance on *In re Hunter*, 970 F.2d 299, 306 (7th Cir.1992) is wholly misplaced. To be sure, *Hunter, id.* is the well from which Great Southern draws its attempted distinction between the "grant" of an exemption and its "effect." But that distinction and the careful analysis that followed in *Hunter* were voiced in the critically different situation of a *joint* husband-and-wife obligation in which the husband alone had filed in bankruptcy and invoked the statutory exemption as to his interest in the tenancy by the entirety property, while the wife did neither as to her own interest. In that circumstance the creditor's post-discharge effort to pursue in rem proceedings against the property (a situation in which the creditor potentially had *some* lien and enforcement rights, and the question was as to the existence and extent of those rights) does indeed implicate the "effect" rather than the validity of the exemption claim. Hence Judge Ripple was called upon to parse the intricacies of Indiana tenancy by the entirety in his characteristically thoughtful manner (970 F.2d at 306–10).

By sharp contrast, the dispute between Great Southern and Allard is foreclosed by the latter's claim of the exemption and the former's failure to interpose a timely objection. There is neither any need nor any room to indulge a comparable exploration of the Illinois law of tenancy by the entirety:

Under *Taylor* the *total* exclusion of Allard's interest in the family residence from the bankruptcy estate is invulnerable to Great Southern's belated attack on behalf of its pre-bankruptcy indebtedness and lien.[5] 8 Lawrence King et al., *Collier on Bankruptcy* ¶ 4003.04, at 4003–14 (15th ed.1996) puts the matter succinctly and accurately in its discussion of the finality of Rule 4003(b) as to the debtor's valuation of property:

> Hence, no party may later argue, in a lien avoidance proceeding or at some other time, that the debtor's interest in an item of property claimed as exempt was not fully exempt.

Accordingly the Bankruptcy Court's avoidance of Great Southern's lien is affirmed—it is quite irrelevant whether Illinois treats entirety property as only "partially exempt" and what effect that might have under the Code.

### Objection to Confirmation

Great Southern charges that the Plan should not be confirmed because Allard proposed it in bad faith. Specifically, Great Southern asserts (1) that Allard filed under Chapter 13 solely to avoid otherwise nondischargeable debt and (2) that Allard failed to provide complete and accurate financial information to the Bankruptcy Court. Great Southern also objects to the Plan's confirmation on the ground that the value of Allard's interest in his residence should have been included in the best-interest analysis pursuant to Section 1325(a)4.

### Allard's Good Faith

■ Section 1325(a)(3) requires as a precondition to confirmation of a plan that "the plan has been proposed in good faith." Good faith determinations are made on a case-by-case basis, using a "totality of the circum-

stances" approach (*In re Smith,* 848 F.2d 813, 817–18 (7th Cir.1988) ). To that end *Smith* has set out a nonexhaustive list of factors to consider (*id.* at 817, quoting (as modified by brackets) *In re Rimgale,* 669 F.2d 426, 432–33 (7th Cir.1982)(footnotes omitted)):

> (1) Does the proposed plan state [debtor's] secured and unsecured debts accurately?
>
> (2) Does it state [debtor's] expenses accurately?
>
> (3) Is the percentage of repayment of unsecured claims correct?
>
> (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
>
> (5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors," *In re Beaver,* 2 B.R. 337, 340 (Bkrtcy.S.D.Cal.1980)?

Judge Squires found (Opinion at 413), and Great Southern does not challenge, that Allard complied with the first three factors. Great Southern disagrees, however, with the Bankruptcy Court's ensuing conclusions that the fourth and fifth factors were also not violated. Mindful of the Rule 8013 instruction that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses," this opinion turns to Great Southern's contentions and Judge Squires' determinations as to Allard's good faith.

■ First, Great Southern Mem. 5–7 claims that Allard filed in Chapter 13 chiefly to avoid paying a debt otherwise nondischargeable under Chapter 7, urging that "Al-

---

**5.** Both of Great Southern's other attempts to invoke case law to its aid are even more inapposite: *Mercer v. Monzack,* 53 F.3d 1, 2–3 (1st Cir.1995) because the creditor's post-deadline challenge there was to whether the property in dispute fit the description of the property scheduled by the debtor as exempt, not as to whether the property was of a kind that was entitled to

exemption or as to the effect of the exemption, and *In re Harry,* 151 B.R. 735 (Bankr.W.D.Va. 1992) because it addressed the totally different question of the power of a trustee to pursue a fraudulent conveyance action, an action for which the court found that Section 546 provides a much longer limitation period.

lard's conduct has been so egregious as to warrant a finding of bad faith."[6] But as Smith teaches (848 F.2d at 818, 819, quoting *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir.1986), and footnote omitted):

> That a debt would be nondischargeable under Chapter 7, however, is not alone sufficient as a matter of law to constitute bad faith.

> \* \* \* \* \* \*

> Section 1325(a)(3) provides that the plan must be *"proposed* in good faith" (emphasis added), not that the debt was incurred in good faith. "Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims."

Here Great Southern's characterization of Allard's conduct as "egregious" (Mem.6) refers to Allard's pre-petition behavior leading to the trademark infringement suit, where Allard was found liable for an intentional tort. That focus is especially misplaced in light of the Bankruptcy Court's finding—a finding that is not clearly erroneous—that Allard "acts in a manner that complies with the letter and spirit of the Bankruptcy Code's provisions" and that the Plan "demonstrates a fundamental fairness in dealing with the two pre-petition creditors" (Opinion at 413–14). Hence the potential nondischargeability of Allard's debt under Chapter 7 is, at a minimum, not outcome-determinative as to whether the Plan was proposed in good faith.

■ Next Great Southern Mem. 7 charges that Allard's schedules were "woefully inaccurate." In that respect, wherever

Great Southern argues that Allard conveyed false or misleading information Allard has offered what the Bankruptcy Court found (either directly or implicitly) to be a satisfactory explanation. This Court is therefore limited to a clear-error review of the Bankruptcy Court's findings as to the reliability of Allard's explanations.[7] What follows is a seriatim summary of Great Southern's assertions of inaccuracy and Allard's responses.

Great Southern Mem. 7 charges that Allard's Statement of Financial Affairs failed to list $16,000 in income from sale of stock. Allard described that transaction as a one-time cashing in of his IRA accounts to pay his obligations to the attorneys who represented him in the trademark litigation (Tr. 69). Judge Squires accepted his explanation that this was a singular event and that the omission was a mistake (Opinion at 413–14).

Next Great Southern Mem. 12 says that Allard failed to list financial accounts that had been listed on his federal income tax returns for prior years (see Mem. 7) and that he "failed to explain what happened to substantial savings formerly in accounts—all of this in light of the fact that he has had no extraordinary expenses for the past several years." Direct evidence contradicts Great Southern's depiction of Allard's hiding of those assets, however—there was testimony credited by the Bankruptcy Court (Opinion at 413–14) that both Allard and his wife lost their steady jobs and that much of their savings went to paying bills, in particular the "large legal fees" connected with the trademark case (Tr. 58).

Great Southern Mem. 8–9 also charges that Allard concealed assets he received in the form of cash payments from Outback Concessions ("Outback"). While Great

---

**6.** As the Bankruptcy Court noted (Opinion at 414), Great Southern had not filed an adversary proceeding to establish whether or not Allard's debt to Great Southern would have been nondischargeable under Chapter 7. This opinion also does not consider that question.

**7.** First, Great Southern Mem. 8 charges as a general matter that "Allard is not credible." But the Bankruptcy Court declined to make such a

determination, finding instead that the testimony of Great Southern's sole witness Troy Irvin "was biased and did not ipso facto reduce the Debtor's credibility" (Opinion at 414 n. 11). Nothing suggests that determination as to Allard's credibility to have been clearly erroneous, so it must be accorded great deference pursuant to Rule 8013.

Southern characterizes Allard's disability as "not acute," Allard described it as significant enough to prevent him from supervising Outback's operation (and thereby earning any income) and said that it may result in the amputation of his foot (Tr. 31–33). Again Allard's explanation of the absence of income was credited by the Bankruptcy Court (Opinion at 406), a finding that was not clearly erroneous.

Next Great Southern Mer. 9 questions Allard's disavowal of income from stock sales in 1993. But Allard testified that the account was maintained and managed by his daughter, that he did not contribute financially or make the trades in question and that he listed the gain on his tax return to reduce her tax burden (Tr. 66–67). Given the Bankruptcy Court's acceptance of Allard's credibility (Opinion at 414 n. 11), it was not clear error for the court to refrain from finding that Allard's failure to list those transfers warranted bad faith.

In a short (literally one sentence) assertion, Great Southern Mem. 9 implies inconsistency in Allard's failure to provide an agreement with a real estate agent for Florida property despite his claiming that it had been listed for several years. Great Southern's suggested inference is not mandated simply by reason of Allard's claim not to have a written agreement with an agent (Tr. 52)—it is entirely plausible that such an agreement may never have existed or, if it did, that it has been lost or thrown away.

Finally, Great Southern Mem. 10 charges that Allard's valuation of his property was incorrect. Again Allard offered explanations that the Bankruptcy Judge credited, as evidenced by his acceptance of Allard's valuations in the best-interest analysis (Opinion at 416). For one thing, Allard said that he did not arbitrarily "trim the value of his interest" in property he owned in Missouri (G.S.Mem.10) because he owned only a half interest in that property (Joint Stip. ¶ 8; Tr. 19–20). In addition, Allard explained his reduction of the appraisal value for his Florida properties as the result of the failure to

obtain certificates of buildability (Tr. 23–24), an assumption upon which those valuations were based (G.S. Ex. 7 at 2).

In sum, then, Allard offered sufficiently credible explanations for each of Great Southern's charges, warranting both the Bankruptcy Court's finding that Allard complied with "the letter and spirit" of the Code (Opinion at 413) and its overruling of Great Southern's objections (*id.* at 416). Again this Court declines Great Southern's attempt to turn matters on their head by emphasizing the debtor's burden of establishing his good faith before the Bankruptcy Court, while ignoring entirely the role of this reviewing court after the Bankruptcy Court has found the debtor to have met that burden (*In re Love,* 957 F.2d at 1354 (citations omitted)):

> The bankruptcy court's good faith finding is a purely factual finding evaluated under the clearly erroneous standard of review. The clearly erroneous standard requires this court to give great deference to the bankruptcy court, the trier of fact. Under this standard, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact. Indeed, reversal under the clearly erroneous standard is only warranted if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Judge Squires' entirely plausible finding of Allard's good faith in submitting his Plan is affirmed.

### Best-Interest Analysis

Lastly Great Southern Mem. 21–22 argues that the Plan should not have been confirmed because Allard's half interest in his residence was not included in the "best interest" calculations submitted with the Plan. Section 1325(a)(4) requires that for a Chapter 13 plan to be confirmed, the unsecured creditors must not receive less than they would if the estate were liquidated un-

der Chapter 7. In this instance, because the Section 522(b) exemption applies to *all* debtor invocations of the Code's protection (Chapter 7 included), the Chapter 13 exclusion of Allard's joint tenancy interest from the bankrupt estate would appear on its face to apply with equal force to the hypothetical Chapter 7 calculation as well.

In an attempt to escape that logic, Great Southern seeks to rely on *In re Digaudio,* 127 B.R. 713, 714–15 (Bankr.D.Mass.1991), which held that a Massachusetts tenancy by the entirety, although exempt from "seizure" or "execution," should have been included in the estate in the Section 1325(a)(4) best-interest analysis. But as Judge Squires correctly observed (Opinion at 415), *Digaudio* is inapposite because Massachusetts, unlike Illinois, specifically permits an attachment (a judicial lien) on a tenancy by the entirety (127 B.R. at 714). Illinois courts have not ruled on that issue in the specific tenancy by the entirety context. But in an analogous situation of property not subject to execution (membership on a trading exchange), *Rochford v. Laser,* 91 Ill.App.3d 769, 774, 46 Ill. Dec. 943, 948, 414 N.E.2d 1096, 1101 (1st Dist.1980) has held that "[w]here the right of sale cannot be asserted, the existence of the lien must be denied." Relatedly *Cochran v. Cutler,* 39 Ill.App.3d 602, 606, 350 N.E.2d 59, 62 (2d Dist.1976) has held that "the lien of judgment does not attach to the judgment debtor's homestead," despite the recording of a memorandum of judgment.

Judge Squires also pointed (Opinion at 415–16) to *In re Paeplow,* 972 F.2d 730, 737 (7th Cir.1992), which held that where Indiana's tenancy by the entirety statute was intended to insulate the entirety property from the claims of creditors, such property was thus exempted from "administration by a trustee in bankruptcy." To that end it really does not matter whether Illinois' entirety exemption protects debtors to the same extent as Indiana's (which was characterized in

*Paeplow, id.* as shielding the entirety property "to the greatest extent possible"). What controls instead is the *Paeplow, id.* description of congressional intent, which operates in the Chapter 7 context as well as for Chapter 13 purposes:[8]

> It [the legislative history behind Section 541] simply means congress intended entirety property to enter the bankruptcy estate and to pass out of the estate if subject to an exemption, and if claimed by the debtor on his or her bankruptcy schedules.

Therefore the exemption of Allard's interest in his residence from his bankruptcy estate—an exemption that Great Southern cannot challenge—also applies in the best-interest analysis under Section 1325(a)(4). Great Southern loses on that final argument too.

### Conclusion

Great Southern's judicial lien was subject to avoidance under Section 522(f) because Allard's exemption of his tenancy by the entirety interest, pursuant to Section 522(b) and Section 522(*l*), was impervious to attack by Great Southern. Accordingly the Bankruptcy Court's grant of Allard's motion to avoid Great Southern's judicial lien is affirmed.

In addition, Judge Squires' finding that Allard filed the Plan in good faith was not clearly erroneous and his application of the best-interest test was clearly correct. Consequently Judge Squires' overruling of Great Southern's objections to the Plan is also affirmed.

---

8. It is also worth noting parenthetically that Illinois law clearly protects entirety property from attachment and sale on behalf of creditors of only one spouse in any event (735 ILCS 5/12-112; *E.J. McKernan Co. v. Gregory,* 268 Ill. App.3d 383, 387, 205 Ill.Dec. 763, 766, 643 N.E.2d 1370, 1373 (2d Dist.1994)).