**In re Michael G. HALKO, Debtor.**

**Bankruptcy No. 96 B 9796.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 31, 1996.

Keevan D. Morgan, Timothy C. Culbertson, Morgan & Bley, Chicago, IL, for Debtor.

Steven B. Towbin, D'Ancona & Pflaum, Chicago, IL, for Parker, Aleshire & Co.

John K. Kneafsey, Nisen & Elliott, Chicago, IL, Former Attorney for Parker, Aleshire & Co.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Parker, Aleshire & Company ("Parker") pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 for en-

try of an order vacating the Court's order (the "Confirmation Order") confirming the Debtor's amended Chapter 13 plan, and the objection thereto filed by Michael G. Halko (the "Debtor"). For the reasons stated herein, the Court denies the motion. In addition, this matter will be referred to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057(a).

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## II. *FACTS AND BACKGROUND*

Parker is a judgment creditor of the Debtor. On February 7, 1995, Parker received a $116,418.77 judgment plus costs against the Debtor. *See* Parker's Exhibit F. Parker also holds an additional unliquidated claim against the Debtor which has not been reduced to judgment. Parker has been represented by the law firm of Nisen & Elliott, through John K. Kneafsey ("Kneafsey") and Jeffrey S. Torosian ("Torosian").

The Debtor filed the instant Chapter 13 petition on April 17, 1996. Parker moved to dismiss the case under 11 U.S.C. § 1307(c) contending that the Debtor's filing was not in good faith, but merely an improper means of avoiding Parker's post-judgment collection and enforcement proceedings and to avoid posting a supersedeas bond while appealing from the judgment. The Debtor opposed the motion to dismiss and the matter was set for trial on October 24, 1996.

The Debtor's current attorneys of record, the law firm of Morgan & Bley, through Keevan D. Morgan ("Morgan") and Timothy C. Culbertson ("Culbertson"), filed the Debtor's original Chapter 13 plan on August 15, 1996. Notice of the confirmation hearing was sent in September 1996 to both Parker

and its attorneys at their respective addresses of record by two separate notices.

On the day of trial on the motion to dismiss, Kneafsey and Morgan advised the Court that after extensive negotiations, the parties had settled their differences. That settlement was reflected in the Debtor's amended Chapter 13 plan (the "Amended Plan") filed that day.[1] Kneafsey signed the Amended Plan indicating support thereof on behalf of Parker. *See* Parker's Exhibit R at p. 17. The Court entered orders granting the Debtor leave to file the Amended Plan and Parker leave to withdraw its motion to dismiss. The case was continued to November 15, 1996 for a confirmation hearing on the Amended Plan. On October 24, 1996, Culbertson certified that he mailed a copy of the Amended Plan to all creditors and parties in interest, including Parker and its attorneys.

At the continued confirmation hearing on November 15, 1996, one of Kneafsey's associates and Morgan appeared before the Court and made representations in support of the Amended Plan. The Court entered the Confirmation Order on their recommendation and that of the attorney for the Standing Chapter 13 Trustee who also appeared. No party in interest appeared in opposition to the Amended Plan nor filed an objection thereto. The Confirmation Order was entered on the docket on November 22, 1996. The Amended Plan's terms provided for a discounted settlement of Parker's claims against the Debtor to be secured by a mortgage on the residence to be funded, in part, by new financing obtained by the Debtor.

Parker's instant motion was filed on November 27, 1996, by the law firm of D'Ancona & Pflaum through Steven B. Towbin ("Towbin"). Parker asserts that the Confirmation Order must be vacated as a manifest error of fact and law because of the allegedly defective deed of conveyance regarding the Debtor's residence and that the "cornerstone" of the Amended Plan and "presumably one of

---

1. Unlike most Chapter 13 plans filed in this Court, the Debtor's Amended Plan was extremely detailed. It summarized the litigation positions of the Debtor and Parker; estimated the possible results of further litigation between them and its

effects upon the creditors; and contemplated the disputed effects of the prepetition conveyance of the Debtor's residence into an Illinois tenancy by the entireties with his non-debtor spouse.

the principal factor (sic) in this court's decision to confirm the Plan, was the court's understanding that [the Debtor's] prepetition transfer of his Residence created a valid tenancy by the entirety, thereby exempting the property under this court's decision in *In re Allard*, 196 B.R. 402 (Bankr.N.D.Ill. 1996)." In addition, as a second ground, the motion alleges that neither of Parker's principals, Donald W. Aleshire nor Suzanne M. Aleshire, had even seen, let alone agreed to, the Amended Plan and that Kneafsey was not authorized to support the Amended Plan or its purported settlement of Parker's claims. The instant motion is supported with copies of the quit claim deed for the Debtor's residence (Parker's Exhibit D) and the verified declarations of the Aleshires. *See* Parker's Exhibits G and J. On December 5, 1996, Nisen & Elliott filed a motion to withdraw as counsel for Parker[2], supported by verified declarations of both Kneafsey and Torosian.

On December 9, 1996, the Debtor filed his objection to the motion at bar. He contends that Parker has not met the requisite burden to establish that the Court committed either a manifest error of fact or law in entering the Confirmation Order; that relief under Fed. R. Bankr.P. 9024 is inapposite and premature; and that there is no new evidence which was not available at the time the Confirmation Order was entered. He further argues that Parker's motion is fatally flawed by improperly presuming that the status of the title to the residence was a principal factor in the Court's decision to confirm the Amended Plan. In sum, the Debtor contends that the statements of the Aleshires that they never saw the Amended Plan until after the Confirmation Order was entered and that they never authorized Kneafsey to represent to the Court that the disputes were settled in the Amended Plan are false. The Debtor concludes that Mrs. Aleshire's hatred for the Debtor has prompted their filing of false affidavits and an attempt to renege on the settlement.

On the record, counsel for the Standing Chapter 13 Trustee joined the Debtor's position opposing the motion, asserting that it shows no proper grounds for the relief requested. Parker filed its reply to the Debtor's response. Therein, Parker further asserts that the Amended Plan was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(3).

### III. *STANDARDS*

■ Parker seeks to vacate the Confirmation Order under Federal Rule of Bankruptcy Procedure 9023, which incorporates by reference Federal Rule of Civil Procedure 59 and, alternatively, under Federal Rule of Bankruptcy Procedure 9024, which incorporates by reference Federal Rule of Civil Procedure 60. The Seventh Circuit has made it clear that under the former version of Rule 59, the time of a motion's service controlled whether it was treated as a Rule 60(b) or Rule 59(e) motion. *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995). If such a motion was served within ten days of a final judgment, it was considered a Rule 59(e) motion. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). On the other hand, if the motion was served more than ten days after a final judgment, it was considered a Rule 60(b) motion. *Deutsch*, 981 F.2d at 301. Effective December 1, 1995, Rule 59(e) was amended to require that "[a]ny motion to alter or amend a judgment shall be *filed* no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e) (emphasis supplied). Parker's motion was filed on November 27, 1996, within 10 days of the entry of the Confirmation Order on the docket. The standards for relief under Rule 59(e) therefore control. Parker's motion is premature under Rule 60 and relief thereunder is inappropriate.

■ Rule 59(e) motions serve a narrow purpose and must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory.

---

2. That motion was granted on December 18, 1996.

*King v. Cooke,* 26 F.3d 720, 726 (7th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1373, 131 L.Ed.2d 228 (1995). Moreover, the purpose of such a motion "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 977 (Bankr.N.D.Ill.1990) (citations omitted). The rulings of a bankruptcy court "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988). "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *BNT Terminals,* 125 B.R. at 977. The decision to grant or deny a Rule 59(e) motion is within the Court's discretion. *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir.1995).

## IV. *DISCUSSION*

### 1. *Whether the Court should vacate the Confirmation Order because of the allegedly defective deed of conveyance for the Debtor's residence*

Contrary to Parker's first argument, the Court's decision to enter the Confirmation Order was not based upon a determination that the Debtor's residence was in fact or in law properly titled with his non-debtor spouse in an Illinois tenancy by the entireties. The Court entered the Confirmation Order based on the Amended Plan meeting the statutory criteria for confirmation under the various requirements of 11 U.S.C. §§ 1322, 1323, 1324, 1325 and 1326; that no party in interest raised any objection to confirmation; and that the attorney for the Standing Chapter 13 Trustee recommended confirmation, as did counsel for both the Debtor and Parker. Without belaboring the detailed and complicated provisions of the Amended Plan, it embodies a compromise of Parker's claims against the Debtor, in part out of the economic exigencies of his present and anticipated financial situation, and at the same time provides a meaningful return or dividend to his other creditors, whose interests the Court considered. Thus, the first ground raised by Parker does not support the relief requested. Indeed, the Amended Plan specifically referenced the disputed transfer of the Debtor's residence and the potential results of further litigation in that regard. *See* Parker's Exhibit R at p. 4 n. 2 and pp. 5–9.

■ Furthermore, the allegedly defective quit claim deed which Parker relies on in support of the motion, although being furnished to the Court for the first time, is not newly discovered evidence that was not available to Parker at the time of the continued confirmation hearing. It had been recorded since May 1995, thereby placing the world at large, including Parker, on constructive notice of its existence and potential defects. "[A] Rule 59(e) motion cannot be used to present evidence that *could and should* have been presented prior to the entry of final judgment." *In re Prince,* 85 F.3d 314, 324 (7th Cir.1996) (quoting *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 867 (7th Cir.1996)). Where a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce the evidence to support a Rule 59(e) motion. *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 202 n. 5 (7th Cir. 1994).

■ To the extent Parker has alleged that the Debtor's actions in transferring the residence constitute a voidable transfer, it must file an adversary proceeding. *See* Fed. R. Bankr.P. 7001(1). If a determination is sought as to the exact interests the parties have in the residence, after the allegedly insufficient transfer due to the defective deed per *Travelers Indem. Co. v. Engel,* 81 F.3d 711, 713 (7th Cir.1996), an adversary proceeding is also required. *See* Fed. R. Bankr.P. 7001(2). Also, whether either of Parker's claims against the Debtor are nondischargeable under 11 U.S.C. § 523(a) can only be decided through an adversary proceeding. *See* Fed. R. Bankr.P. 7001(6). No such matters were properly brought or pend-

ing before the Court at the time of the continued confirmation hearing on the Amended Plan, nor have such matters to date been filed. The Court did not make any finding of fact or conclusion of law at the time it entered the Confirmation Order regarding any of those issues.

Finally, Parker's reliance on the Court's opinion in *In re Allard,* 196 B.R. 402 (Bankr. N.D.Ill.1996), *aff'd,* 202 B.R. 938 (N.D.Ill. 1996) is both misplaced and inaccurate. *Allard* also involved an objecting creditor's similar claims that were not properly before the Court at that confirmation hearing as pointed out in that opinion. 196 B.R. at 411. At the time of the confirmation hearing, no adversary proceeding challenging the allegedly defective deed was pending before the Court. Thus, the challenge to the transfer of the residence was not ripe for determination or appropriately a confirmation matter.

### 2. *Whether Parker's attorney was authorized to support the Amended Plan and compromise Parker's claims against the Debtor*

■ Equally unavailing and unconvincing is Parker's second ground for relief: that Kneafsey was not authorized to support the Amended Plan or settle Parker's claims thereby. The Aleshires testified that they met with Kneafsey on October 23, 1996 to discuss a settlement offer made by the Debtor. They directed Kneafsey to negotiate the best possible deal, but neither would agree to any settlement until it was presented to them in writing. They further testified that they did not know of the continued confirmation hearing on November 15, 1996 until after it took place. Additionally, they claim that they did not see the Amended Plan and Confirmation Order until November 25, 1996,

when Towbin obtained those documents. Both testified that they did not authorize Kneafsey to execute, accept, or settle Parker's claims pursuant to the Amended Plan. Both Aleshires testified, however, that neither had any reason to believe that Kneafsey was being untruthful.

Contrary to the testimony of the Aleshires, Kneafsey testified that he was specifically authorized by Donald Aleshire on October 23, 1996 at a meeting between Kneafsey, Torosian, and the Aleshires to accept the Amended Plan. The Aleshires and Kneafsey testified that Mrs. Aleshire left the meeting prior to its conclusion. According to Kneafsey, it was after her exit that Donald Aleshire authorized him to accept the Amended Plan. Additionally, Kneafsey testified that he explained the terms of the Amended Plan to the Aleshires and told them that it was their decision whether to accept or reject the settlement of Parker's claims contained therein. Torosian's verified statement, which he testified was true and accurate, details his extensive involvement in the matter and corroborates Kneafsey's testimony that Donald Aleshire agreed to the settlement of Parker's claims per the Amended Plan.

■ The Court finds the verified statements of Kneafsey and Torosian, which were corroborated by their trial testimony, more credible, as well as more detailed, specific, and corroborated by the documentary evidence, than the conclusory and contrary statements of the Aleshires.[3] This Court is in the best position to assess the credibility of the witnesses and weigh the evidence. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (deference given to trial court's findings that involve credibility of wit-

---

**3.** There were several instances during Mr. Aleshire's testimony that the Court thought his statements were somewhat incredible. For example, on Mr. Aleshire's October calendar for the 24th, he had the words "possible set." next to the entry for the Debtor's confirmation hearing. *See* Parker's Exhibit N. Mr. Aleshire testified that these words did not connote a possible settlement of Parker's claims against the Debtor, but rather, represented a telephone call that he was to make to an individual. The Court finds this testimony less than credible. Further, Mr. Aleshire's trial

testimony was impeached by his contrary deposition testimony. In addition, Mrs. Aleshire's positive statements in her testimony and affidavit are in marked contrast to her earlier evasive and noncommittal statements made at her deposition. Furthermore, the Aleshires' attempted ex parte communications with the Court on November 15, 1996, the day of the confirmation hearing, detracts from both their credibility and their purported lack of knowledge that the confirmation hearing had been continued to that date.

nesses because only the trial judge can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding of and belief in what is stated).

Furthermore, the documentary evidence corroborating Kneafsey's and Torosian's affidavits, as well as their trial testimony and that of Peggy Moffit's, Kneafsey's secretary, compellingly shows that the Amended Plan had been sent to Parker and the Aleshires prior to the continued confirmation hearing. *See* Parker's Exhibit P. Although the Aleshires claim they did not receive the Amended Plan until Towbin obtained it after the confirmation hearing, Kneafsey, Torosian, and the Aleshires undisputedly met on October 23, 1996 to discuss the case. During that meeting, Kneafsey and the Aleshires discussed the Amended Plan and Parker's claims thereunder.

 It is beyond question that Kneafsey and Torosian were Parker's attorneys of record in this matter and acted herein not only in that capacity but also as officers of the Court. An attorney has the authority to act on behalf of the person he represents. *Anderson v. Flexel, Inc.*, 47 F.3d 243, 249 (7th Cir.1995) (collecting cases). The attorney of record is presumed to have authority to settle a case in open court unless rebutted by affirmative evidence showing that authority is lacking. *See Brewer v. National R.R. Passenger Corp.*, 165 Ill.2d 100, 106, 208 Ill.Dec. 670, 649 N.E.2d 1331, 1334 (1995) (citations omitted); *In re Marriage of Marr*, 264 Ill.App.3d 932, 935, 202 Ill.Dec. 657, 660, 638 N.E.2d 303, 306 (1st Dist.1990); *Knisley v. City of Jacksonville*, 147 Ill.App.3d 116, 120, 100 Ill.Dec. 705, 708, 497 N.E.2d 883, 886 (4th Dist.1986), *appeal denied*, 113 Ill.2d 575, 106 Ill.Dec. 47, 505 N.E.2d 353 (1987). The law of principal and agent is generally applicable to the relationship between attorney and client. *In re Estate of Maslowski*, 204 Ill.App.3d 379, 383, 149 Ill.Dec. 487, 490, 561 N.E.2d 1183, 1186 (1st Dist.1990) (citation omitted). Thus, the client is bound, according to the rules of agency, by acts of his attorney within the scope of the attorney's authority. *Id.*

The Court finds that Kneafsey and his associate had apparent authority to speak for Parker as its lead attorney of record when they advised the Court that the matters between the Debtor and Parker were settled, both at the time the motion to dismiss was withdrawn on October 24, 1996, and at the time of the continued confirmation hearing on November 15, 1996. Parker has failed to rebut the presumption of Kneafsey's authority to settle in open court with credible affirmative evidence that authority was lacking. Parker's only evidence to rebut the presumption of Kneafsey's authority was the testimony of the Aleshires, which the Court finds to be less than credible.

Representations are not only extremely important to and binding upon the client, Parker, whose agent Kneafsey was and who is bound by his acts, but also to the Court in which he serves as an officer, and on whom the Court must and does rely. The Court inherently relies on the representations of its officers who owe duties to the Court as well as their clients. For it is on the basis of such reliance on such representations that much of the business of the Court is done in resolving the disputes of the various parties. *See generally* Local Bankruptcy Rule 608; Rules of Professional Conduct for the Northern District of Illinois, Rule 1.2(g), Rule 1.16(a)(1) and (b), and Rule 3.3(a)(1), (2), (6) and (b) and (c). That factor weighs heavily in favor of the credibility of Kneafsey's testimony as corroborated by Torosian.

 As a general proposition, voluntary resolution of litigation through settlement is favored by the courts. *Victory Beauty Supply Co. v. Lus–Ter–Oil Beauty Products Co.*, 562 F.Supp. 786, 789 (N.D.Ill. 1983). Settlement is especially significant in this district, which perennially has the second highest volume per annum bankruptcy case filings in the country. A settlement agreement is a contract, *Reichelt v. Urban Inv. & Dev. Co.*, 611 F.Supp. 952, 954 (N.D.Ill.1985), which cannot be unilaterally repudiated by any of the parties. *Debose v. Mueller*, 552 F.Supp. 307, 308 (N.D.Ill.1982). In the Chapter 13 reorganization context, those principals are embodied in the res judicata effect of 11 U.S.C. § 1327(a). More-

over, the interests of the other creditors must be considered, none of whom have appeared or objected to the confirmation of the Amended Plan, but all of whom have been stayed from collecting their prepetition claims against the Debtor, and are awaiting dividend distributions pending resolution of this motion. Therefore, the Court rejects this ground for relief.

### 3. Whether the Amended Plan complied with the good faith requirement of 11 U.S.C. § 1325(a)(3)

Next, Parker argues that the Amended Plan did not meet the good faith requirement of 11 U.S.C. § 1325(a)(3).[4] Parker contends that the Court failed to consider the factors mandated by Seventh Circuit precedents in determining whether the good faith standard of § 1325(a)(3) had been met.[5] The Court rejects this argument. The Court did consider the Amended Plan's contents in light of § 1325(a)(3) and the controlling Seventh Circuit precedents. Furthermore, the Court followed Federal Rule of Bankruptcy Procedure 3015(f) which provides in relevant part that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not be any means forbidden by law without receiving evidence on such issues." Because there were no objections to the Amended Plan, the Court made the determination that it was proposed in good faith and not forbidden by law without taking evidence on those issues. Accordingly, the Court rejects this argument.

### V. REFERRAL

■ The Court has the express and independent duty to refer this matter to the United States Attorney for the Northern District of Illinois as required by 18 U.S.C. § 3057(a) whenever reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred. *See Flushing Savs. Bank*

v. Parr (In re Parr), 13 B.R. 1010, 1020 (E.D.N.Y.1981); *In re Lewis*, 51 B.R. 353, 355 (Bankr.E.D.N.Y.1985). The Court has reasonable grounds to believe that one or more persons has knowingly and fraudulently made a false oath or account in connection herewith in violation of 18 U.S.C. § 152(2) and knowingly and fraudulently made false statements under penalty of perjury in filed affidavits and testimony before the Court violative of 18 U.S.C. § 152(3). Accordingly, a copy of this Opinion and Order shall be transmitted to the United States Attorney for the Northern District of Illinois with the request that the report under 18 U.S.C. § 3057(b) be forwarded to the undersigned upon completion of the inquiry into this matter.

### VI. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion to vacate the order confirming the Debtor's Amended Plan. A copy of this Opinion and Order shall be transmitted to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057(a).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

---

**4.** Section 1325(a)(3) provides:

 (a) Except as provided in subsection (b), the court shall confirm a plan if—
 (3) the plan has been proposed in good faith and not by any means forbidden by law.
11 U.S.C. § 1325(a)(3).

**5.** The Seventh Circuit has discussed the good faith determination with regard to Chapter 13 plans in several cases. *See In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992); *In re Schaitz*, 913 F.2d 452, 453–56 (7th Cir.1990); *In re Smith*, 848 F.2d 813, 816–22 (7th Cir.1988); *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 431–33 (7th Cir.1982).